No. 2609

## COLES v. SOMERVILLE

December 5, 1923.                    220 Pac. 550.

1. SALES—DETERMINATION OF LEGAL EFFECT OF WRITTEN CONTRACT
IS FOR COURT.
Where a contract is in writing, the determination of the
legal effect of the writing or the facts in creating an agency
or sale is for the court.

2. SALES—CONTRACT CONSTRUED AS A WHOLE TO DETERMINE ITS
CHARACTER.
To determine the character of a contract, whether creating
an agency or sale, it should be construed as a whole, weighing
its terms and provisions in connection with the reasonable
and natural results of its performance, to gain a definite
conception of intention of the parties.

3. SALES—SALE OF STOCK OF MERCHANDISE HELD NOT TO CREATE
AGENCY IN VENDEE.
Contract for sale of business and stock of merchandise
*held* one of sale, and not of agency.

APPEAL from Fifth Judicial District Court, Nye
County; *Mark R. Averill*, Judge.

Action by W. L. Coles against W. T. Somerville and
another. Judgment for plaintiff, and defendants appeal.
**Reversed and remanded, with directions.**

*Wm. Forman* and *W. J. Forman*, for Appellants:

This is conditional sale contract.

It does not show authority in Offerman to buy goods
as agent of defendants, but only "right to sell and deal
with them in usual course of retail trade." An allega-
tion that he had authority to buy as agent of defendant
is necessary to establish cause of action.

Estoppel to assert title by owner who places property
in hands of another who assumes apparent possession
does not arise as against innocent purchaser without
notice in absence of intention of owner that purchaser
shall act upon apparent ownership. Lockwood Bros. v.
Frisco Lumber Co., 97 Pac. 562; Hill v. Van Sandt, 40
Pac. 676.

Reservation of title in seller is valid against levying
creditor and even bona-fide purchaser for value without
notice, in absence of statute to contrary. 24 R. C. L. 455.

Account books, if in existence, are best evidence of
their contents. 10 R. C. L. 906.

*Clawson & Elsmore, Frank T. Dunn,* and *Ryland G. Taylor,* for Respondent:

The questions involved in this appeal are:

(1) Was Offerman agent of appellants at time of ordering goods, and if so,

(2) Was he acting in scope of employment?

That stock remained property of Somervilles is unquestioned. Offerman was put in charge, empowered to transfer title to third persons. This is agency. 1 Mechem, Agency (2d ed.), sec. 26; 21 R. C. L. 817; 2 C. J. 419.

Authority of manager in charge will be presumed to be coextensive with business to be performed. Mechem, sec. 980. He may conduct it in former usual customary way. Duncan v. Hartman, 145 Pa. St. 595.

Principal will be bound by acts of agent necessary to keep business a going concern. 2 C. J. 643.

The contract was an option to purchase with delegation of authority to manage business in meantime. A somewhat similar contract was held to be a bailment in Norris v. Boston Music Co., 151 N. W. 971.

An allegation of purchase by plaintiff, "then and there acting as agents for defendant" is only another form of declaring they had purchased for defendant. Cochran v. Goodman, 3 Cal. 244.

Even if our allegations were ambiguous, as no objection was made, it was waived. Rev. Laws, 5045.

In McKenna v. Stayman court held supposed agent was independent contractor. Slevin v. Reppy and Wells v. Ry. Co. do not bear out harsh rule that act of agent must be alleged as act of principal. 2 C. J. 904.

Witness Coles was not testifying as to what books contained, but to facts he knew independently. This is permissible. 10 R. C. L. 903.

By the Court, SANDERS, J.:

Prior to the 11th day of November, 1920, W. T. Somerville and Sarah Somerville had been engaged in the general merchandise business at Tonopah, Nye County, Nevada. The business was carried on in a building known as the "Somerville Paint Store." On

said date the Somervilles contracted to sell said business and their stock of merchandise then on hand, in bulk, to one H. C. Offerman of Tonopah, for the agreed price of $2,575, $775 of which was paid in cash, and the balance in installments of $175, payable on the first day of each and every month, beginning on the 1st day of December, 1920. Offerman entered into the possession of said premises and continued to conduct therein a general merchandise business, and paid to the Somervilles all but $225 of the purchase price, when he defaulted and the Somervilles retook possession of the merchandise then on hand, in accordance with the terms and conditions of the sale agreement. While Offerman was in possession of the store and in the course of carrying on the business therein, he ordered several bills of goods, consisting of wall paper and other merchandise, from the White House Drapery and Furniture Company, a Utah corporation, doing business at Salt Lake City. The orders covered the period from the month of October, 1920, to February, 1921, and totaled in the aggregate the sum of $1,153.96. Offerman agreed to pay for the merchandise so ordered upon demand, and on April 1, 1921, the said company made demand upon Offerman, but no part of the amount due was paid, except the sum of $236.39. Thereafter the said company assigned its indebtedness, less the credit, to W. L. Coles, its secretary, who thereafter made demand upon said Somervilles for the payment of the balance due, to wit, the sum of $917.57. The Somervilles declined and refused to pay said sum, or any part thereof. Thereupon W. L. Coles, as assignee, sued the Somervilles in the district court of Nye County to recover judgment for said sum of $917.57. The case was tried before the court without a jury. The court made special findings of facts and conclusions of law, and rendered judgment in favor of said Coles and against said Somervilles for the full sum of $917.57, from which judgment, and also from an order denying their motion for a new trial, the Somervilles have appealed.

Counsel for the respondent, W. L. Coles, say in their reply brief:

"The questions involved in this appeal are: (1) Was Offerman the agent of appellants at the time of ordering the goods from the respondent? and if so (2) Was he acting in the scope of his employment in so purchasing? If both of these questions are answered in the affirmative, then this appeal must fail."

These are questions of law, and refer for their solution to the contract entered into on the 11th day of November, 1920, wherein the said Somervilles were parties of the first part, and said Offerman was the party of the second part. Omitting the formal parts of said contract, it reads as follows:

"Sale Contract. * * * Witnesseth, that the said parties of the first part, for and in consideration of the sum of $775 lawful money of the United States in hand paid, receipt of which is hereby acknowledged, do hereby agree to sell, assign, and forever release unto the party of the second part, his heirs and assigns, all of that certain stock of goods and merchandise now contained in the building known as the 'Somerville Paint Store,' situated on Main Street, Tonopah, Nevada, which stock of goods is more particularly described as and includes all wall paper, paint, glass, picture frames, one Ford automobile, delivery type, serial 1243274, and all goods of whatever nature, kind, or class that may be contained in the said building, or that may pertain to the said business of said W. T. Somerville; Provided, that the said party of the second part shall pay to the parties of the first part the further sum of $1,800 as follows: $175 per month on the first day of each and every month, beginning on the 1st day of December, 1920, and thereafter, until the full sum of $1,800 shall have been paid in full: Provided, that if the party of the second part shall be unable to make any payment on the 1st day of the month as herein specified, then and in that event the said parties of the first part will, upon the request of the second part, allow said party of the second part thirty (30) days' additional time to make such payments; but such extension shall not serve to extend the time of subsequent payments.

"In the event of the failure of the said second party to make the said monthly payments above specified or any of them when the same shall become due, or within the 30-day extension period as above provided for, then and in that event this agreement shall become null and void, and the said first parties may thereupon take and resume the possession of all of the said stock of merchandise above described, together with all additions made thereto by the second party in the conducting of said business. It is understood and agreed between the parties hereto that the said second party may sell and deal with the said stock of merchandise in the usual course of retail trade. The party of the second part shall pay all taxes upon the said goods and merchandise during the life of this agreement and commencing with taxes for the year 1921; and the second party further agrees to keep the said property insured for not less than $1,500, and in the event of his failure to do so, the first parties may insure the same and the amount of premium shall be added to the final payment under this agreement.

"It is further agreed by the parties of the first part that they, upon the faithful performance of this agreement by the second party, and each and both of them, will refrain for a period of five years from the date hereof from engaging in the wall paper and paint business, or a business similar to that now carried on by the said W. T. Somerville, or to aid or assist any other person to establish any such business anywhere within the county of Nye, State of Nevada. This agreement is not intended to restrain the said parties of the first part from establishing and carrying on any business whatsoever at any place without Nye County.

"[Signed and acknowledged in due form.]"

1. The question for decision is: Is the agreement a contract of sale, or is it a contract of agency? It is well settled that, where the contract is in writing, the determination of the legal effect of the writing or the facts in creating agency or sale is a matter for the court. Mechem on Agency (2d ed.), sec. 50. Mr. Mechem (vol. 1,

sec. 48) thus distinguishes a sale from agency to sell in these words:

"The essence of sale is the transfer of the title to the goods for a price paid or to be paid. Such a transfer puts the transferee, who has obtained the goods to sell again, in the attitude of one who is selling his own goods, and makes him liable to the person from whom he received them as a debtor for the *price* to be paid, and not liable as an agent for the *proceeds* of the resale. The essence of agency to sell is the delivery of the goods to a person who is to sell them, not as his own property, but as the property of the principal, who remains the owner of the goods, and who therefore has the right to control the sale, to fix the price and terms, to recall the goods, and to demand and receive their *proceeds* when sold, less the agent's commission, but who has no right to a *price* for them before sale, or unless sold by the agent."

2. To determine the character of the contract under consideration, we must, of course, construe it as a whole, weighing all its terms and provisions in connection with the reasonable and natural results of its performance, in order to gain a definite conception of the intention of the parties in this regard. Mishawaka Woolen Mfg. Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109. Since the actual results of the contract control in its construction, the real question is as to the relation established between the parties by the contract, and this question is usually one of law to be determined from all its provisions.

3. The intent of the parties in this instance is readily perceivable. What, then, is their relation and the true meaning of their agreement? There is nothing in it to indicate that Offerman took the goods upon consignment as a factor, or as an agent of any kind, with power to transmit title to any article of merchandise of the vendors to subpurchasers; but, construing the contract as a whole, it is obvious that Offerman contracted for the purchase of the goods to sell upon his own account. The very use of its language and the conditions prescribed to acquire title seem to expressly negative all

idea of agency. This conclusion is strengthened by the express provisions of the agreement, which contains every element of a conditional sales contract and transmission of ownership on performance. The decision and opinion of the trial court are incorporated in and made a part of the findings of fact, and are included in the bill of exceptions. We find in the opinion of the trial judge this pertinent clause to the point to be decided:

"The case has proceeded upon the theory that the Somervilles were undisclosed principals of Offerman— that they constituted Offerman their agent, and are responsible for debts that he contracted. From my consideration of the case, I cannot reach this conclusion, unless the deal shows a departure from what the courts require of the seller under conditional sales contracts."

We are unable to find any fact or circumstance in evidence consistent with the theory of counsel for the respondent, that the resale of the merchandise was to be made by Offerman as agent of the Somervilles. The court in its findings of fact adheres closely to the terms and conditions of the agreement of sale, and characterizes it as a conditional sales contract, but concludes as a matter of law that the Somervilles, in placing Offerman in sole possession and control of the said business, constituted and appointed Offerman to act as their agent to manage the said business. We are of opinion that this conclusion is clearly erroneous.

Having answered the question propounded by counsel for respondent, Was Offerman the agent of appellants at the time of ordering the goods from the respondent? in the negative, it follows that the judgment must be reversed, and the cause remanded, with directions to the lower court to render and enter judgment for the appellants, with costs of this appeal.

It is so ordered.