Andrew GUNDERSON, Plaintiff and Appellant,

v.

R. O. BURBIDGE, Scandia American Bank, Stanley, North Dakota, and J. P. Evans, Defendants and Respondents.

No. 7510.

Supreme Court of North Dakota.

March 29, 1956.

Ella Van Berkom, Minot, for appellant.

Cox, Cox, Pearce & Engebretson, Bismarck, for respondent.

BURKE, Chief Justice.

This is an action to determine adverse claims to real property. The principal issue in the case is whether a certain oil and gas lease executed by the plaintiff and his wife as lessors to the defendant Burbidge as lessee, and deposited in escrow with the defendant, Scandia American Bank, was de-

livered by the depositary to the lessee in violation of the terms of the escrow agreement. The plaintiff contends that the delivery was unauthorized and void. The defendants assert that the delivery was in accord with the contract of the parties at the time of delivery and therefore valid. After a trial of the issues in district court, the trial court made findings of fact and conclusions of law in favor of the defendants and judgment was entered accordingly. Plaintiff has appealed from the judgment and demanded a trial de novo in this court.

In May 1951, the plaintiff and the defendant, Burbidge, reached an agreement with respect to the oil and gas lease in question. That agreement is evidenced by two instruments. The first of these is an oil and gas lease executed by the plaintiff and his wife as lessors to the defendant Burbidge as lessee. The second instrument is an escrow agreement. It provided that the lease should be deposited in escrow with the Scandia American Bank at Stanley and should be delivered to the defendant Burbidge upon the following condition:

"If said lessee or his assigns shall pay or cause to be paid within 90 days from the date of this agreement the sum of eight hundred forty & no/100 ($840.00) dollars, the aforesaid Bank is hereby authorized and directed to deliver over aforesaid lease to the said lessee, or his assigns.          :

"If, However, the aforesaid lessee or his assigns, shall fail to pay said sum within the time herein stipulated and as herein provided, the said Bank is hereby authorized and directed to return the said lease and this agreement shall be and become null and void, and all rights, obligations and liabilities thereunder shall forthwith cease, and determine * * *."

The escrow agreement was dated May 12, 1951, and by its provisions, it would terminate 90 days thereafter or on about August 10, 1951. On September 7, 1951, or about three weeks thereafter defendant paid to the Scandia American Bank the sum of $840 which was the sum mentioned in the escrow agreement and received delivery of the lease from the bank. On September 10, 1951, the bank issued its cashier's check payable to the plaintiff in the sum of $839 and mailed it to him at his post office address. On October 10, 1951, Burbidge filed the lease for record and on October 11, 1951 he assigned it to the defendant Evans. Evans recorded his assignment a few days later. As to the facts stated above there is no dispute. It is also undisputed that plaintiff was in Stanley on August 13, 1951, and on that date called on Burbidge and at the Scandia American Bank. There is, however, a sharp conflict in the evidence as to the content of the conversations that took place between the parties on that day. The principal issue in the case, whether the delivery of the lease to Burbidge on September 7th, was an authorized and valid delivery depends upon a finding of what was actually said in those conversations. The issue is one of fact.

According to plaintiff's version, he first called on Burbidge. He testified, "Well, I come in there and I told him that as long as that (the lease) was null and void, I wasn't too anxious to sell because I could get more money. He says, 'Well, I got some more, let's pool the whole thing together * * *, maybe we can make some money.' I told him, I wasn't interested * * * I was just interested in my own lease. All I want is my lease. So he says, 'Well, that should be at the bank.'" Plaintiff stated that he then went to the bank, where, at a teller's window presided over by Morris Nelson, he cashed a check for $214.00. He testified that at the time he presented the check, he asked Morris Nelson about the lease, and that Morris Nelson, without leaving the window, or making any search whatever said: "I don't know where it is." And that he replied, "It's null and void so it probably doesn't make any difference where it is." Plaintiff also said that he wasn't in the bank for more than five minutes.

Mr. Burbidge testified that when plaintiff called at his office on August 13, he stated that the Army Engineers in making a survey of bottom land of the Missouri River had determined that land had been added

to the land described in the lease by accretion and that he should therefore have more money for the lease. Burbidge told him that that could not be done until steps had been taken to show the existence of this accretion land upon the county records and plaintiff replied, "Well just let it go for awhile then." Burbidge denied the conversation as related by the plaintiff.

Morris Nelson who, together with his father and his brother Lloyd, operated the Scandia American Bank testified that he had no conversation whatever with plaintiff when he was in the bank on August 13; that he was the officer of the bank who had charge of escrow agreements and that the escrow agreement and lease here in issue, were in the escrow agreement file in the bank on that day. He testified that he and his brother Lloyd met plaintiff on the main street in Stanley either in the middle or latter part of August 1951. He stated that on that occasion he asked plaintiff, "what he wanted us to do with that lease that we had lying there at the bank as time had run out on it, * * * and that plaintiff replied "that he had been down and talked to Mr. Burbidge and was going to give him more time on it."

Lloyd Nelson testified that he was the man who cashed the check for plaintiff on August 13. He identified an initial placed on the check in his handwriting at the time the check was cashed. He stated that Mr. Gunderson made no mention of the lease at that time. He also corroborated the testimony of his brother, Morris, concerning the conversation they had with the plaintiff on the main street of Stanley. He stated that on that occasion plaintiff said, "Well, I am going to give Mr. Burbidge some more time or a few more days, or words to that effect."

Plaintiff's testimony as to the conversations had with Burbidge and Morris and Lloyd Nelson is entirely uncorroborated, while the other three corroborate each other. Much of the testimony of the plaintiff is implausible. It is difficult to believe that an officer of a bank when asked about a lease, which had been deposited in the bank under an escrow agreement, would, without leaving the teller's window, or making any search, or asking any of the other officers or employees of the bank about it, reply that he didn't know where it was. It is also difficult to believe that one who was asking for a lease, would have been satisfied with such treatment and would have completed his business and been out of the bank in no more than five minutes.

There is other evidence which tends to support the defendant's version of the facts. On October 4, 1951, Burbidge wrote plaintiff as follows concerning the land described in the lease:

"Dear Mr. Gunderson:

"The title certificate which I have obtained from the abstractors shows that the above land is still held by Mountrail County as title owner. Very likely you still have some county deeds which are not recorded covering this land.

"Will you please check on this and if you find the deeds bring them in so that they can be recorded.

"I intended to drive out and see you, but the roads have been so bad that I haven't been able to get out so decided I better write you."

A few days later Burbidge was hunting in the vicinity of the Gunderson property and talked to him concerning the contents of the above letter. At that time plaintiff told him that his wife in Columbia Falls, Montana was mailing the deed for recording in the office of the Register of Deeds in Mountrail County. Plaintiff admitted that this conversation took place and conceded that at that time he did not state or claim that the lease which represented Burbidge's only interest in the land, had been voided. The deeds were mailed to the Register of Deeds and recorded on October 10, 1951. This recording made it possible for Burbidge to sell the lease to Evans. Although plaintiff denies it, it is probable that at the time of this conversation he knew that Burbidge had paid for the lease and that it had been delivered to him. Plaintiff farmed in North Dakota and had a home in Columbia

Falls, Montana. The bank mailed the cashier's check representing the proceeds of Burbidge's payment to plaintiff at his North Dakota address on September 10, 1951. From there it was forwarded to his Columbia Falls' address. In the ordinary course of the mails, it should have arrived at its final destination sometime before October 1. Plaintiff testified in this case, that he did not receive the check until November 15. And according to Morris Nelson, he came into the bank after the first of February 1952, with the check and stated: "Where has this (check) been all the time? I just received it."

■ The trial court upon a review of the evidence found that the version of the facts as testified to by the defendant Burbidge and by Morris and Lloyd Nelson was the truth. Upon our consideration of the evidence we have arrived at the same conclusion. We find therefore that after the written escrow agreement had expired, the plaintiff told both Burbidge and the officers of the bank that Burbidge might have more time in which to make the payment that had been required by that agreement. This constituted a new agreement between the parties. While no specific time was set for the performance of this oral agreement, the lessee would have a reasonable time within which to perform. 30 C.J.S., Escrows, § 10 b, p. 1210; 19 Am.Jur. (Escrow, Sec. 20) 439. He did perform within a reasonable time.

■ Counsel for the plaintiff has argued that the evidence introduced by defendants was an attempt to vary the terms of a written contract by proof of a parole agreement. We see no merit in this contention. By its terms the written agreement had expired before the parole agreement was made. The parole agreement constituted a new and independent contract. The delivery of the lease to Burbidge in accordance with that contract was an authorized and valid delivery. The judgment of the district court is therefore affirmed.

MORRIS, SATHRE, JOHNSON and GRIMSON, JJ., concur.