SUMMA CORPORATION, A DELAWARE CORPORATION, APPELLANT, v. T. W. RICHARDSON, MAURICE H. FRIEDMAN, JACK BARENFELD, BELDON R. KATLEMAN and IRVING J. LEFF, Respondents.

No. 10767

May 17, 1979                                    596 P.2d 208

[Rehearing denied June 14, 1979]

*Morse-Foley,* Las Vegas, for Appellant and Cross-Respondent.

*John Peter Lee, Ltd.,* and *James C. Mahan,* Las Vegas, for Respondents and Cross-Appellants.

## OPINION

By the Court, GUNDERSON, J.:

On June 15, 1965, respondents and Summa's predecessor in interest entered into a lease agreement by which respondents agreed to let two adjacent parcels of land, including improvements and personal property located thereon.[1] The lease also provided that the lessee had the option to purchase the parcels. Thereafter, on June 1, 1973, Summa, as lessee, commenced an action against respondents seeking specific performance of the

---

[1]The improvements on the parcels included the buildings housing the Silver Slipper Casino. The personal property included the slot machines, bar fixtures, equipment, furniture, and thirty-three (33) oil paintings by Julian Ritter, allegedly valued at approximately $300,000.

option provision. On cross-motions for summary judgment, the district court entered judgment for respondents. That judgment was reversed by this court and remanded to the district court with instructions to enter judgment for Summa. Summa Corp. v. Richardson, 93 Nev. 228, 564 P.2d 181 (1977).

On remand, the district court entered a decree of specific performance. Both respondents and Summa moved to amend the decree. After a hearing on the matter, the district court entered an amended decree which provided: (1) the option to purchase included only the real property, and excluded the personal property; and (2) escrow was deemed to have closed on October 1, 1973, and the monthly payments made by Summa toward the purchase price prior to October 1, 1973, were to be considered as rental payments. Summa appealed from both of these provisions of the amended decree.

Respondents cross-appealed contending the district court erred in refusing to conduct a hearing regarding the fair rental value of the personal property after closing of escrow.

1. The option to purchase is contained in Paragraph XXII of the lease agreement and provides that: "The Lessee shall have the option of purchasing both Parcel 'A' and Parcel 'B' . . . ." Paragraph XXII is referred to in Paragraph XXXVII(C)(5) of the agreement wherein it is stated: "If the option to purchase the subject real property contained in Paragraph XXII is exercised by the Lessee . . . this lease shall cease . . . ." Respondents submit that these paragraphs of the lease clearly limit the option to purchase to the real property.

In construing the option provision of the lease, "[w]e recognize that the primary object of construction of a contract is to discover the intention of the parties and in order to effectuate that objective the contract must be construed as a whole and considered in its entirety." West v. Brenner, 396 P.2d 115, 122 (Idaho 1964). See Coles v. Sommerville, 47 Nev. 306, 220 P. 550 (1923); Hamberlin v. Townsend, 261 P.2d 1003 (Ariz. 1953); Rodriguez v. Barnett, 338 P.2d 907 (Cal. 1959); Hung Wo Ching v. Hawaiian Restaurants, Ltd., 445 P.2d 370 (Hawaii 1968). In our view, the agreement, when read in its entirety, manifests an intent that the option provision include both the real and the personal property.

Indeed, in order to place the paragraphs relied upon by respondents in proper context, those paragraphs must be read in conjunction with Paragraph I of the Agreement which describes the subject matter of the lease. That paragraph provides, in pertinent part:

### A. Description of Parcel "A" and Parcel "B" Premises

Lessor hereby lets and demises to Lessee . . . Parcel "A" (which will include Parcel "A-1" and Parcel "B", more particularly described in Exhibit "1" hereof, entitled "Legal Description of Premises" (all of which is herein referred to as the "Premises"). The word "Premises" shall also include any improvements now situated on Parcel "A" and which may be made thereon by Lessee and all of the personal property set forth in Exhibits "2" and "2-A" herein, and each and every part thereof, whenever the context so requires.

Accordingly, the district court erred, as a matter of law in concluding that the option provision of the agreement excluded the personal property and, thus, that portion of the decree must be reversed and the case remanded with instructions to amend the decree consistent with this opinion.

2. Summa also contends that the district court erred in holding that escrow closed on October 1, 1973, and that monthly payments made by Summa toward the purchase price prior to that time should be treated as rent payments. We disagree. The option agreement does not specify the length of time within which escrow should close. It was thus within the discretion of the district court to set a reasonable time within which escrow should have closed. *See* Bradshaw v. Superior Oil Co., 164 F.2d 165 (10th Cir. 1947); Melfi v. Goodman, 388 P.2d 50 (N.M. 1963); Gunderson v. Burbidge, 75 N.W.2d 757 (N.D. 1956). The period between March 29, the date the option was exercised, and October 1, the date set for close of escrow, is approximately six months. Under the circumstances here involved, we believe that a six-month escrow for a conveyance of this magnitude is not unreasonable.[2] Because the closing of escrow was properly set for October 1, 1973, the district court correctly ruled that monthly payments toward the purchase price made prior to October 1 should be applied toward the rent due for those months. Accordingly, this portion of the decree is affirmed.

Other issues raised by Summa are without merit.

Because of our disposition of these issues, we need not consider respondents' cross-appeal.

---

[2] In its findings, the district court specifically addressed this issue, stating: ". . . The Court finds that six months is a reasonable elapsed time from Plaintiff's exercise of its options (March 29, 1973) within which an escrow of this nature and complexity should have closed."

THOMPSON and BATJER, JJ., and FONDI, D.J.,[3] concur.

MANOUKIAN, J., concurring in part, dissenting in part:

I concur in that part of the majority opinion reversing the trial court's order that the option excluded the personal property.

However, I respectfully dissent from the affirmance of the trial court's determination that the escrow "shall be deemed to be closed on October 1, 1973." In my view of the case, the court's imposition of a six-month escrow was unreasonable and constitutes an abuse of discretion. Appellant timely exercised its option to purchase in March, 1973, and by June 1, deposited money, obtained insurance and performed all the other conditions precedent to its exercise of the option. Summa Corp. v. Richardson, 93 Nev. 228, 564 P.2d 181 (1977). Thus, by the time appellant filed this action, all that remained was the execution of the usual documents of conveyance and the issuance of a title policy. Notwithstanding, the court below extended the close of escrow from June 1, 1973 to October 1, 1973 and continued Summa's rent obligation under the lease in the amount of $32,000 per month or a total of $128,000. In this, I believe the court erred.

Admittedly, the option agreement is silent as to the length of the escrow. In these circumstances, the escrow should close at the expiration of a reasonable period of time. Tavel v. Olsson, 91 Nev. 359, 535 P.2d 1287 (1975). In my opinion, the trial court erred in determining that a six-month escrow was reasonable. This is especially true in that respondents' conduct had the effect of delaying consummation of the contract. Compare Cladianos v. Friedhoff, 69 Nev. 41, 240 P.2d 208 (1952). Even giving due consideration to the complexity of the escrow, it should have been closed within two to three months of Summa's exercise of the option. Under the circumstances, the trial court's order that appellant pay rent through the extended escrow period constitutes a clear abuse of discretion.

---

[3]The Governor, pursuant to Nev. Const. art. 6, § 4, designated the Honorable Michael E. Fondi, Judge of the First Judicial District, to sit in place of THE HONORABLE JOHN MOWBRAY, Chief Justice, who was disqualified.