PARK WEST VILLAGE, INC., a Utah corporation, Elwood Nielsen and Lynn Nielsen, Plaintiffs and Respondents,

v.

Gary AVISE and Susan Avise, Defendants, Third-Party Plaintiffs and Appellants,

v.

ROYAL STREET COMPANY, and all persons unknown claiming a right, title, estate or interest in real property described in the Counterclaim or Third-Party Complaint adverse to Plaintiffs' title or constituting a cloud thereon, Third-Party Defendants and Respondents.

No. 18720.

Supreme Court of Utah.

Feb. 20, 1986.

Robert Felton, Salt Lake City, for defendants, third-party plaintiffs and appellants.

Leonard J. Lewis, Salt Lake City, Tom Clyde, Park City, for plaintiffs and respondents.

HOWE, Justice:

Defendants, Gary and Susan Avise, appeal from a judgment quieting title to a tract of land on which they reside in plaintiffs and in third-party defendant Park City. Defendants are lessees of the tract and have an option to purchase it from their lessor. They contend that their lessor had acquired title by adverse possession.

Plaintiffs and Park City are the owners (subject to the claims of defendants) of adjoining tracts of land located just north and west of the old Union Pacific Depot in Park City, Utah. Straddling the boundary between these two tracts and overlapping a part of each tract is a much smaller tract consisting of one-third of an acre on which defendants reside under a lease with Eliza Lake (hereinafter called the Lake yard). Located in the Lake yard is a small house, an unattached garage, a garden, trees, and alfalfa. There are also two bridges over a small stream. The stream and a road run in front of the yard and the boundary of a road runs along the rear. The frontage and one side of the yard are fenced.

The genesis of the title to the Lake yard as a separate tract of real property begins with a quitclaim deed executed by Summit County to James R. Burbidge in 1941. The property conveyed is described simply as "New House East in Lumber Yard, Park City, Utah." The deed recited that the property had been sold to Summit County for delinquent taxes for the years 1932 to 1938, inclusive, in the name of James R. Burbidge. Later in 1941, Burbidge quitclaimed to Maynards "personal property" described as "that certain dwelling house, described as 'THE NEW HOUSE,' east, in the lumber yard" together with certain enumerated pieces of furniture. In 1952, Maynards quitclaimed "personal property" to Patrick H. Lake and Eliza B. Lake, husband and wife. The description in that deed was identical to the description contained in the prior deed to Maynards except for the reference to furniture. Mr. and Mrs. Lake lived on the premises until his death in 1966. She continued to live there until 1969, at which time she began renting the premises on a month-to-month basis. In May 1979, she and Gary Avise, who had been a tenant for several years, entered into a written "residential lease and option to purchase" for the "single family dwelling" described as "residence 106 Pacific, aka 106 Lumber Yard." The option allowed Avise to purchase the premises at any time during the five-year lease for $40,000.

In 1980, Eliza Lake entered into a written agreement to sell any interest she might have in the Lake yard to plaintiffs for $20,000, subject to any interest Avise might have under his lease and option to purchase. In performance of that agreement, Mrs. Lake executed to plaintiffs two quitclaim deeds. In one deed, she quitclaimed a dwelling house described as "the new house east, in the lumber yard, Park City." In the other deed, she quitclaimed a tract of land described by metes and bounds which included the two-thirds of the Lake yard claimed by plaintiffs.

Thereafter, plaintiffs instituted this action against defendants Avise to quiet title to the Lake yard. Park City appeared and claimed title to approximately one-third of the yard. Defendants Avise counterclaimed for specific performance of the option and deposited the required down payment into court. The trial court quieted the title to two-thirds of the Lake yard in plaintiffs and the other one-third in Park City, both subject to the unexpired lease in favor of defendants Avise. The option contained in the lease was held to be unenforceable on the ground that the description of the optioned premises was too vague and uncertain. The court found that Mrs. Lake had obtained a prescriptive easement to a portion of the yard, but that it was extinguished by merger when she quitclaimed the yard to plaintiffs.

Defendants appeal, contending that Mrs. Lake had acquired title to the Lake yard by adverse possession and that the description of the yard in the lease and option to purchase was sufficiently definite to be legally enforceable.

U.C.A., 1953, § 78–12–7.1 provides:

In every action for the recovery or possession of real property or to quiet title to or determine the owner thereof, the person establishing a legal title to such property shall be presumed to have been possessed thereof within the time required by law; and the occupation of such property by any other person shall be deemed to have been under and in subordination to the legal title, unless

that it appears that such property has been held and possessed adversely to such legal title for seven years before the commencement of such action....

It is undisputed that Mrs. Lake and her husband entered into possession of the Lake yard in 1952 and continuously occupied the same, either personally or through her tenants, up until the commencement of this action. It is not known whether the Burbidges, and the Maynards before them, actually physically possessed the Lake yard. While it is true, as pointed out by plaintiffs, that the deed to the Lakes only purported to convey to them personal property described as a dwelling house, it is undisputed that the Lakes and their tenants occupied the yard in which the house was situated. The record shows that the yard was partially fenced and a fenced garden within the yard was established and cultivated. A garage was built and a porch was added to the house. The trial court expressly found that Mrs. Lake possessed the structure and the real property for more than twenty years and that her possession was open, notorious and hostile. Indeed, it was on the basis of that finding that the trial court held that Mrs. Lake acquired a prescriptive easement over part of the Lake yard. Defendants do not question that finding by way of any cross-appeal. It therefore appears that Mrs. Lake's possession satisfied the requirements of section 78–12–7.1.

The trial court held that Mrs. Lake had failed to acquire title to the Lake yard by adverse possession because of a failure of proof that she had paid the taxes assessed against the land during the period of her occupancy. U.C.A., 1953, § 78–12–12 provides:

In no case shall adverse possession be considered established under the provisions of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party, his predecessors and grantors have paid all taxes which have been lev-

ied and assessed upon such land according to law.

It is not questioned that the Lakes received a tax notice each year and that they paid the tax which was levied. However, it appears that the property described on the tax notice was "new house east in lumber yard" and that the assessment was based upon the value of the improvements only. In holding against defendants' claim of adverse possession by Mrs. Lake, the trial court made the following two findings of fact:

14. The Summit County records established that taxes were assessed by the county on the subject property separately from the structure standing thereon.

15. The evidence presented at trial establishes that the taxes on the subject property were not paid by the defendants, or by Eliza Lake, or any of those predecessors in interest to Eliza Lake....

Contrary to finding No. 14, the evidence does not bear out that Summit County assessed and levied taxes on the land of the Lake yard in addition to those paid by the Lakes on the improvements (structures). An employee of the Summit County assessor's office testified that he had made a search of the records in that office and could find no evidence that any taxes had been assessed on the land prior to 1975. The only evidence was that in 1975 Summit County commenced assessing the portion of the land in the Lake yard claimed by plaintiffs under serial No. SA404. No one paid the taxes levied based on that assessment for 1975, 1976, 1977 and 1978. As a result, the property was scheduled for tax sale in May 1979. At that time, Zion's National Bank redeemed the property (apparently on behalf of plaintiffs) by paying the delinquent taxes. On the other portion of the yard to which Park City claimed title, there again was no evidence of any assessment of taxes against the land. Park City acquired title in 1969, and since that year the property was exempt from taxation. Utah Const. art. XIII, § 2. Mrs. Lake testified that shortly before her husband's death in 1966 he searched the Summit County records for any taxes assessed and levied against the land, but he was unable to find any.

We find the evidence compelling that while the taxes paid by the Lakes and their predecessors on the Lake yard were based only on the valuation of the improvements, there were, in fact, no additional taxes assessed and levied against the Lake yard based upon the valuation of the land. The only proof of tax payments on plaintiffs' land that they could produce commenced for the year 1975. By that year, Mrs. Lake had been in possession and had paid taxes on the improvements for twenty-three years. It appears inconceivable to us that if, at any time during that span of twenty-three years, the predecessors in title to plaintiffs and Park City had paid taxes on the land, such persons would not have come forward and asserted the right to possession of the Lake yard. There was no evidence that there were any delinquent taxes owing on the land for the years prior to 1975 or that the land had been sold by the County for failure of payment of taxes for those years. The conclusion, therefore, is inescapable that until 1975 the Lakes paid all taxes which were levied and assessed against the Lake yard. In so doing, they "paid all taxes which have been levied and assessed upon such land according to law," as required by section 78–12–12. *See Farrer v. Johnson*, 2 Utah 2d 189, 271 P.2d 462 (1954); *Utah Copper Co. v. Chandler*, 45 Utah 85, 142 P. 1119 (1914); and *Central Pacific Railway Co. v. Tarpey*, 51 Utah 107, 168 P. 554 (1917), to the effect that the duty of an adverse possessor to pay taxes extends only to those taxes which have been lawfully assessed and levied. *Home Owners Loan Corp. v. Dudley*, 105 Utah 208, 141 P.2d 160 (1943), relied upon by plaintiffs and Park City, is not contrary. In that case, taxes had in fact been assessed and levied upon the underlying land as well as upon the improvements. We held that an adverse possessor must pay *all* the taxes which have been lawfully assessed or levied.

■ We hold that well before the time Mrs. Lake gave defendants Avise an option to buy the Lake yard, her adverse possession against the predecessors of plaintiffs and the predecessors of Park City had ripened into title to that property. When plaintiffs subsequently purchased all her right, title and interest, they did so with the express knowledge that the option existed and with the express covenant to assume all obligations thereunder. However, the trial court found that the option was so vague and uncertain in its description of the property to be sold as to render it unenforceable. We disagree. In the option, the premises are described as "residence 106 Pacific Avenue, aka 106 Lumber Yard." This description, while not in metes and bounds, is the street address of a house, garage, and well-defined yard. It is bordered on two sides by streets and is partially fenced. There was no serious question raised at trial as to the boundaries of the yard. This is not a case where an owner attempts to describe only a small part of a larger tract. Here, the intent of both parties to the action was to describe all of the property which Mrs. Lake owned at that address. We conclude that the street address of the property, which is not claimed to be inaccurate, constituted a definite and ascertainable description of the property for use in the preliminary document. In *Reed v. Alvey*, Utah, 610 P.2d 1374 (1980), we ordered specific performance of a contract where the subject property was described simply as "corner of Hillview and Ninth East." In that case, like the instant case, there was no real dispute as to what property the parties intended to sell or buy. The seller had already sold to others all his property at that address except the unit claimed by the plaintiff buyer. *See also Hackford v. Snow*, Utah, 657 P.2d 1271 (1982); and *Colman v. Butkovich*, Utah, 556 P.2d 503 (1976), for examples of other descriptions which have been held to be sufficient, even when contained in a deed. There is no merit to the contention of plaintiffs that Mrs. Lake intended to give defendants an option to purchase the improvements only.

The option by its express terms covers the "real property" at the designated address.

■ Defendants Avise also complain of the trial court's ruling that plaintiffs as their lessors were not liable to them for the expense of a septic tank which they were required to install in September and October 1981 under orders from the Summit County Department of Health. It appears from the evidence that that expense was incurred and paid by defendants after they had exercised their option to purchase the property. It is well-established law that when a lessee exercises an option to purchase during the term of the lease, the lease and the relation of lessor and lessee is terminated. The relation of vendor and vendee is then created. All obligations under the lease are extinguished. *Ruark v. Peterson*, 30 Colo.App. 162, 491 P.2d 75 (1971); *Summa Corp. v. Richardson*, 93 Nev. 228, 564 P.2d 181 (1977) *appeal after remand*, 95 Nev. 399, 596 P.2d 208 (1979); *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392 (1949); 51C C.J.S. *Landlord and Tenant* § 82(1)(b); 49 Am. Jur.2d *Landlord and Tenant* § 372. No claim is made by defendants that plaintiffs as vendors of the property had any obligation to install the septic tank. We find no error in the trial court's refusal to hold plaintiffs for that cost.

The judgment below is reversed insofar as it failed to enforce defendants' option to purchase. The case is remanded to the trial court with instructions to allow defendants to complete their purchase of the Lake yard as described in Exhibit 17–D and, upon performance of their duties under the option and contract, to quiet title in them to the real property, including the improvements thereon. Costs awarded to defendants.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.