Velma MARCHANT, Elma Winterton, Leora Robinson, Wanda Penrod, Mona Lichty, Merle Anderson, Plaintiffs and Appellants,

v.

PARK CITY, a municipal corporation, and the State of Utah, Defendants and Respondents.

No. 880131–CA.

Court of Appeals of Utah.

March 13, 1989.

Robert Felton, Salt Lake City, for plaintiffs-appellants.

J. Craig Smith, James W. Carter, Park City, for Park City.

Alan Bachman, Salt Lake City, for State.

## OPINION

Before DAVIDSON, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Appellants challenge the trial court's ruling that they did not have vested title to certain real property in Park City and thus were not entitled to recover damages for destruction of· the home on the property. Appellants claim that they have title to the property through adverse possession, deeds or alternatively, that their use was prescriptive. Accordingly, they claim entitlement to $20,000 in damages for the destruction of the residence on the property. We affirm.

In August of 1981, Park City issued a demolition permit to Deer Valley Resort to remove a building. The building was demolished by Lloyd Brothers Construction Company between August 4 and September 7 of 1981 allegedly to build an access road to Deer Valley Resort. Appellants brought this action seeking to quiet title to the real property and to recover damages for the destruction of the home located on the property.

According to appellants, their grandfather, William Rolfe, possessed the home and yard on the property from 1910 until his death in 1939. After his death, his wife continued to occupy the property until 1946. She died in about 1949. William Rolfe's son, Charles Rolfe, rented out the house from 1949 until about 1964. Charles Rolfe died in 1966 and his wife, Ethel Rolfe, died in 1981. Charles Rolfe's daughters, appellants, claim to have visited the property at least once a year since 1964. In support of their claim that they have vested title to the property, appellants rely on the following documents:

1. A quit claim deed from Dan and Belle McPolin to Jesse McCarrell dated March 19, 1906 for "that certain one-story framed, three-room dwelling house situated on the easterly side of Silver Creek and about 100 feet easterly from the lumber-yard of the Summit Lumber Company."

2. A quit claim deed from Summit County to William Rolph [sic] dated June 10, 1914 for $28.68 for "[i]mprovements East U.C. Tracks, Park City, Utah." The quit claim deed states that the deed is "made from title secured from a tax sale in the year 1909 and by an Auditors deed to Summit County, dated May 1st, 1914."

3. A quit claim deed from Summit County to William Rolfe dated June 21, 1917 for $1.00 for "that certain frame dwelling house by Lumber Yard in Park City, Summit County, Utah, assessed to William Rolfe in the year 1912."

4. A letter from the Summit County Treasurer to Charles Rolfe dated May 16, 1957 stating that in 1938 the county issued a quit claim deed to Charles Rolfe's father. The letter also stated that from 1940 to 1954, taxes were taken care of by widows abatement and that Charles Rolfe paid taxes of $8.06 in 1955 and $7.33 in 1956.

5. A tax deed from Summit County to Charles Rolfe dated June 13, 1963 for "House in lumber yard," stating "[t]his conveyance is made in consideration of payment by the Grantee of the sum of $12.53 delinquent taxes, penalties, interest and costs, constituting a charge against said real estate for the year 1958 in the sum of $7.81."

The State of Utah claims chain of title through a series of documents, all of which were recorded, and all, except numbers 3, 4 and 5 below, contained a metes and bounds description of the property. The documents are as follows:

1. A patent from the United States government, undisputedly containing the property in question, to George Snyder on April 5, 1882.

2. A deed from George Snyder to the Park City Smelting Company, dated November 14, 1883.

3. A deed from the Park City Smelting Company to Lewis H. Withey and Clay H. Hollister on September 21, 1912. The deed did not contain a metes and bounds description, but described the conveyed property as "all of the real property or rights or interest in real property belonging to the Park City Smelting Company and situated in the County of Summit, Utah."

4. A deed from the executors of Lewis H. Withey's estate to Silver King Coalition Mines Company on November 5, 1926. The deed did not have a metes and bounds description, but conveyed "all the estate, right, title, interest, property, claim and demand whatsoever of the said Lewis H. Withey ... [of] the property above described."

5. A trustee's deed from Clay Hollister, Withey's tenant in common, to Silver King Coalition Mines on February 18, 1927. The deed did not contain a metes and bounds description but described the property as "all other real property or rights or interests in real property ... belonging to Park

City Smelting Company, and situated in the County of Summit, State of Utah."

6. A deed from Silver King Coalition Mines Company to United Park City Mines Company, dated May 8, 1953.

7. A deed from United Park City Mines Company to Park City, dated April 2, 1969.

8. A deed from Park City to the State of Utah, dated June 7, 1982.

There was no evidence that anyone other than William Rolfe paid taxes on the property until 1931. From 1931 to 1953, the real property in question was assessed as part of Silver King Coalition Mines Company. From 1954 to 1969, real property taxes were assessed to and paid by United Park City Mines.

The trial court found that appellants' chain of title was discontinuous and, at best, conveyed title to improvements on the property only. The court concluded that the State's claim to title of the property was superior to that of appellants and, therefore, quieted title in the State of Utah and dismissed appellants' complaint.

On appeal, appellants assert that: 1) the trial court erred in finding that they did not have vested title to the property by deed or adverse possession; 2) even if appellants do not have title to the property, they established prescriptive use; 3) respondents are barred from challenging appellants' tax title by the statute of limitations set forth in Utah Code Ann. § 78–12–5.1 (1987); and 4) respondents' claims are barred by laches and estoppel.

### Vested Title

Appellants first claim on appeal that the trial court erred in concluding they did not have vested title to the property by deed. Appellants assert they obtained tax title to the property by virtue of the 1914 quit claim deed and the 1963 tax deed from Summit County, and any action challenging that title is barred by the four year statute of limitations set forth in Utah Code Ann. § 78–12–5.1 (1987). In addition, they claim title under the Marketable Record Title Act, Utah Code Ann. § 57–9–1 through –10 (1986), commencing with the 1917 quit

claim deed as the "root" of title. The trial court concluded that the tax deeds under which appellants claimed title did not convey title to the underlying real property.

In reviewing the trial court's conclusions of law, we apply a correction of error standard with no deference to the trial court. *Creer v. Valley Bank and Trust Co.*, 770 P.2d 113 (1988). A person who has a duty to pay taxes cannot fail to pay taxes and subsequently purchase the land at a tax sale and thereby attempt to strengthen his title to the property. *Dillman v. Foster*, 656 P.2d 974, 979 (Utah 1982); *Crofts v. Johnson*, 6 Utah 2d 350, 313 P.2d 808, 810 (1957). In addition, one who has a tax deed but does not hold title to the property cannot assert the special statute of limitations contained in Utah Code Ann. § 78–12–5.1 (1987). *Dillman*, 656 P.2d at 978–79.

In this case, there is no indication that William Rolfe was the record titleholder. Even assuming he received quit claim deeds from Summit County in 1914, 1917 and 1957 after paying delinquent taxes, we agree with the trial court that, at most, he received title to the improvements described in the deeds. The 1963 tax deed, similarly, conveyed only the improvements, not the underlying real property. Taxes at that time were apparently separately assessed on improvements and real property in Summit County, and the State's predecessor in title, United Park City Mines, paid real property taxes from 1954 to 1969. The deeds did not strengthen Rolfe's title to the property, but merely indicated that he paid delinquent taxes on the property. The State's title, on the other hand, while flawed, is clearly superior to that of appellants. Therefore, we hold that the trial court did not err in concluding that appellants failed to establish title to the property by deed and that the tax deed statute of limitations was inapplicable.

### Adverse Possession

Appellants' second assertion of error is that the trial court erred in finding that appellants did not have title to the property by adverse possession. The pro-

ponent of an adverse possession claim has the burden of proving full statutory compliance, including the payment of all taxes levied and assessed. *Neeley v. Kelsch,* 600 P.2d 979, 982 (Utah 1979). However, if a party in possession of property and his predecessors have paid taxes based on the value of improvements on the property and no taxes have been levied based on the valuation of the land, the party has established title to the property by adverse possession if all other elements of adverse possession are met. *Park West Village, Inc. v. Avise,* 714 P.2d 1137, 1140–41 (Utah 1986); *see also Royal Street Land Co. v. Reed,* 739 P.2d 1104, 1106 (Utah 1987).

In *Avise,* the trial court found that Mrs. Lake failed to acquire title to property because she failed to pay taxes on the property. The Utah Supreme Court reversed, stating that the trial court's finding that Mrs. Lake failed to pay taxes on the property was contrary to the evidence. The court noted that an employee of the Summit County assessor's office testified at trial that he had searched the records in that office and could find no evidence that any taxes had been assessed on the land prior to 1975. The undisputed evidence established that Mrs. Lake received a tax notice every year and paid the tax that was levied. Although those taxes were based only on the value of the improvements on the property, the Utah Supreme Court held that because no other taxes were levied, Mrs. Lake had "paid all taxes levied and assessed" in accordance with Utah Code Ann. § 78–12–12 (1977). The court also noted that there was no evidence that there were any delinquent taxes owing on the land for the years prior to 1975 or that the land had been sold by the County for failure to pay taxes for those years.

■■■■ Appellants claim that this case is indistinguishable from *Avise.* We disagree. In *Avise,* unlike this case, Mrs. Lake established that she had paid taxes on the improvements to the property for twenty-three years. In this case, however, the only evidence that appellants' predecessors had paid taxes on the property for seven continuous years were quit claim and tax deeds and a letter from Reed Pace to Charles Rolfe. There was no evidence that taxes were paid prior to delinquency. At best, the deeds and letter indicate that William Rolfe paid delinquent taxes on the personal property at various tax sales. Further, appellants established that Charles Rolfe paid taxes on improvements on the property in 1955, 1956 and 1958, but it was also proven that real property taxes were paid by Silver King Coalition Mines Company those same years. Thus, unlike *Avise,* appellants failed to prove that they paid taxes on the home or on the underlying land for a continuous seven year period. *See* Utah Code Ann. § 78–12–7.1 (1987). Payment of delinquent taxes at a tax sale cannot be used to establish the payment of taxes necessary to a successful claim of adverse possession. Otherwise, anyone purchasing property at a tax sale would be able to claim the number of years taxes had gone unpaid as a credit on the seven year period required for adverse possession. In addition, in contrast to *Avise,* the quit claim deeds themselves establish that taxes were assessed and not paid during the years appellants claim to have established title by adverse possession. Therefore, we hold that appellants failed to sustain their burden of proving payment of taxes for the requisite seven year period, and the trial court correctly concluded that appellants did not acquire the property by adverse possession.

### Prescriptive Easement

■■■■ Appellants also assert that even if they do not have fee title to the property by adverse possession or chain of title, they have a prescriptive easement. Appellants are unclear as to what they claim flows from the alleged prescriptive easement. If they claim that a prescriptive easement, if established, would give them ownership rights in the underlying property, they err. *See Osborn & Caywood Ditch Co. v. Green,* 673 P.2d 380, 382 (Colo.Ct.App.1983). A prescriptive easement does not result in ownership, but allows only use of property belonging to another for a limited purpose. *North Union Canal Co. v. Newell,* 550 P.2d 178, 179

(Utah 1976). A prescriptive easement "arises under our common law from a use of the servient estate that is 'open, notorious, adverse, and continuous for a period of 20 years.'" *Crane v. Crane*, 683 P.2d 1062, 1064 (Utah 1984) (quoting *Jensen v. Brown*, 639 P.2d 150, 152 (Utah 1981)). The trial court concluded that appellants had not established a prescriptive easement.[1] A claimant of prescriptive easement must establish the necessary elements by clear and convincing evidence. *Garmond v. Kinney*, 91 N.M. 646, 579 P.2d 178, 178 (1978). Appellants not only had the burden of proof at trial, but on appeal are similarly required to marshall all evidence supporting the trial court's findings and then to demonstrate that the evidence, when viewed most favorably to the trial court, is insufficient. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Appellants have not marshalled the evidence supporting the trial court's findings in connection with the issue of prescriptive easement. It further follows that on appeal, appellants are required to marshall evidence which would support each element required to prove their claim of prescriptive easement. For example, the trial court found that appellants' predecessors in interest worked for Silver King Coalition Mines Company, and were given permission by the company to build a house on the property in question. Appellants claim that this finding is not supported by the evidence but they do not provide other argument or reference to the trial record to establish that the use was "adverse," one of the required elements for prescriptive easement. Similarly, appellants have not compiled evidence which establishes the other necessary elements and have further failed to analyze what rights or claims to damages might flow from the alleged prescriptive easement. We will not consider conclusory arguments without citation to either the record or cases involving pivotal issues. *Randall v. Salvation Army*, 100 Nev. 466, 686 P.2d 241, 244 (1984). There-

fore, we find that appellants did not establish a prescriptive easement to the property.

## Laches and Estoppel

 Finally, appellants assert that Park City is barred from claiming ownership of the property by laches and estoppel. Those issues were not raised in the trial court and, therefore, we decline to reach them. *See James v. Preston*, 746 P.2d 799, 801 (Utah Ct.App.1987).

Affirmed.

DAVIDSON and ORME, JJ., concur.

---

1. The court also concluded that the prescriptive easement claim was barred by Utah Code Ann. § 78–12–5 (1987). However, in *Morris v. Blunt*, 49 Utah 243, 161 P. 1127 (1916), the Utah Supreme Court held that the predecessor section to the present code does not apply to actions for prescriptive easements.