Velma MARCHANT, Elma Winterton, Leora Robinson, Wanda Penrod, Mona Lichty, Merle Anderson, Plaintiffs and Petitioners,

v.

PARK CITY, a municipal corporation, and the State of Utah, Defendants and Respondents.

No. 890139.

Supreme Court of Utah.

March 5, 1990.

---

Robert Felton, Salt Lake City, for plaintiffs.

James Carter, J. Craig Smith, Park City, for Park City.

R. Paul Van Dam, Alan Bachman, Salt Lake City, for State of Utah.

HALL, Chief Justice:

A writ of certiorari was granted to the Utah Court of Appeals [1] in this action to quiet title to real property located in Park City, Utah. The Utah Court of Appeals affirmed the decision of the trial court that title to the property was properly held by the State of Utah. We affirm.

The plaintiffs in this action claim to be heirs of persons who obtained tax deeds to part or all of the real estate in question and occupied or possessed the land from 1910 to 1964. The tax deeds date as far back as 1914, 1917, and 1963. In addition, the evidence at trial indicated that plaintiffs' predecessor, Charles Rolfe, paid taxes assessed to him by Summit County in 1955, 1956, and 1958.

Defendant Park City traces its ownership of the real property to a patent from the United States government to George Snyder, April 5, 1882; from George Snyder to Park City Smelting Company, November 14, 1883; from Park City Smelting Company to Lewis H. Withey and Clay H. Hollister, September 21, 1912; from Withey and Hollister to Silver King Coalition Mines Company (Silver King), November 5, 1926, and February 18, 1927, respectively; from Silver King to United Park City Mines Company, May 8, 1953; and from United Park City Mines Company to Park City, April 2, 1969. Park City transferred its title to the property to the State of Utah on June 7, 1982.

In August of 1981, Park City issued a permit to Deer Valley Resort to demolish the house located on the real property. No one had lived in the house since 1964, and at the time of demolition, it was in a state of disrepair, although plaintiffs claim that some efforts were being made to effect repairs. Plaintiffs claim that they are entitled to quiet title to the real property in their names and $20,000 damages for demolition of the house on the premises.

Plaintiffs present five issues for review: (1) Was plaintiffs' tax title protected from challenge pursuant to Utah Code Ann. § 78-12-5.1 (1987), even if the tax deed language was ambiguous? (2) Did plaintiffs' predecessors obtain title to the real property by adverse possession? (3) Does the Utah Marketable Record Title Act, Utah Code Ann. § 57-9-1 to -10 establish title in plaintiffs? (4) Did plaintiffs' predecessors maintain a right to possess the real property by prescriptive easement? (5) Is Park City Municipal Corporation liable for the damages resulting from the demolition

---

1. *Marchant v. Park City,* 771 P.2d 677 (Utah    Ct.App.1989).

of the dwelling located on the real property?[2]

## Title by Quitclaim Tax Deeds

Plaintiffs claim to have title to the real property by virtue of quitclaim tax deeds pursuant to Utah Code Ann. § 78–12–5.1 (1987), which states:

[W]ith respect to actions or defenses brought or interposed for the recovery or possession of or to quiet title or determine the ownership of real property against the holder of a tax title to such property, no such action or defense shall be commenced or interposed more than four years after the date of the tax deed, conveyance, or transfer creating such tax title. . . .

Plaintiffs are seeking to apply the four-year statute of limitation for tax deeds against any defense or claim made by Park City or any other entity because plaintiffs' last tax deed was in 1963 and no action was brought within four years of that tax purchase.

While plaintiffs are correct in asserting that title to property can be obtained by and through a tax deed, their claim based on the statute of limitation protection afforded in section 78–12–5.1 is defeated in two ways. First, the scope of plaintiffs' claim is governed by what was transferred by the tax deeds to plaintiffs' predecessors. Second, plaintiffs' claim is defeated by our decision in *Dillman v. Foster*,[3] where we held that a party cannot strengthen a weak title claim by failing to pay his own assessed taxes, purchasing at a tax sale, and then relying on the protections of section 78–12–5.1.

The nature and character of the property transferred in the tax sales of 1914, 1917, and 1963 is governed by the clear and unambiguous language of the deeds. Plaintiffs' first quitclaim tax deed was is-sued in 1914 and described the property as "improvements East U.C. Tracks, Park City, Utah." Plaintiffs' second quitclaim tax deed was issued in 1917 and described the property as "that certain frame dwelling house by Lumber Yard in Park City, Summit County, Utah, assessed to William Rolfe in the year 1912." The last deed was a tax deed issued in 1963 that described the property as "House in Lumberyard," stating, "This conveyance is made in consideration of payment by the Grantee of the sum of $12.53 delinquent taxes, penalties, interest and costs constituting a charge against said real estate for the year 1958 in the sum of $7.81."

While we do not voice approval of the practice, the uncontroverted evidence in the trial court revealed that early in this century, it was the practice of Summit County to tax the real property to one party, generally a mining company who claimed title to the real property, and to tax the improvements and personal property to the employee of the mining company who occupied the real property.[4] The trial court found, and the Utah Court of Appeals correctly held, that the language of the 1914 and 1917 deeds clearly demonstrates that the tax assessments to plaintiffs' predecessors were for "improvements" and the "dwelling house" only and not for the underlying real property.

The language of the 1963 tax deed indicates that the charge at the tax sale was against "real estate." While the 1963 deed may appear, at first blush, to make a broad grant of property, including the underlying real property, the undisputed facts at trial indicate that taxes on the underlying real property were assessed to and paid by Silver King Coalition Mines Company from 1931 to 1953 and by United Park City Mines Company from 1953 to 1969. Nothing in the record indicates that the 1963 tax

---

**2.** Since this case was argued and submitted, plaintiffs have suggested a sixth issue, that of boundary by acquiescence. However, boundary by acquiescence was not an issue at trial, the same having been disposed of prior thereto by summary judgment, and no appeal was taken therefrom. We therefore do not address the issue.

**3.** 656 P.2d 974 (Utah 1982).

**4.** *See generally Park West Village, Inc. v. Avise,* 714 P.2d 1137 (Utah 1986).

deed was for anything but the improvements on the land.

Plaintiffs claim that they are afforded the protections of section 78–12–5.1. Plaintiffs particularly base their claim upon subsection 78–12–5.3(1), which states:

> The term "tax title" as used in § 78–12–5.2 and § 59–2–1364, and the related amended §§ 78–12–5, 78–12–7, and 78–12–12, means any title to real property, *whether valid or not*, which has been derived through or is dependent upon any sale, conveyance, or transfer of property in the course of a statutory proceeding for the liquidation of any tax levied against the property whereby the property is relieved from a tax lien.

(Emphasis added.)

In addressing this issue, the Utah Court of Appeals held, "[O]ne who has a tax deed but does not hold title to the property cannot assert the special statute of limitations contained in Utah Code Ann. § 78–12–5.1 (1987)." [5] This Court also addressed the application of section 78–12–5.1 to tax deeds in *Frederiksen v. LaFleur.*[6] In *LaFleur*, the defendant received a tax deed to real property, but because the tax sale was conducted by an employee of the Salt Lake County Auditor's office who had failed to take any oath of office, the trial court held that the tax deed was invalid. We reversed the trial court and held, "[T]ax purchasers may avail themselves of the special statute of limitation regardless of either the invalidity of their tax title or their inability to establish an affirmative claim to title apart from their tax title." [7] If the Court of Appeals' holding stands for more or less than this proposition, they err.

The instant case is to be distinguished from *LaFleur* in that the tax deed in *LaFleur* was a tax deed for real property, whereas the tax deed here is only for improvements located on the real property. The validity of plaintiffs' claim to ownership of the improvements on the real property is not at issue here. We hold that plaintiffs' tax deeds do not purport to convey an interest in real property, and therefore, our holding in *LaFleur* is inapposite.

■  Plaintiffs' claim of vested title is also defeated by our decision in *Dillman.* In *Dillman*, the plaintiffs held title to a parcel of property and failed to pay the real property taxes assessed by Duchesne County in 1964. In 1967, after a series of conveyances and reconveyances, the plaintiffs were again titleholders and conveyed the property to National Title Insurance Company, who immediately conveyed to the defendant's predecessors. Because taxes had not been paid in 1964, a final auditor's sale was eventually held in 1969, and the plaintiffs appeared and repurchased the property. We held,

> [O]ne who fails to pay his lawfully assessed taxes and then conveys away the property, ought [not] later to be afforded the protection of the tax title statutes when he finally meets his tax obligation at a tax sale and then attempts to raise that tax deed against the successor to his own grantee.[8]

In the instant case, plaintiffs sought to expand their title to the improvements on the land to include the underlying real property. Even assuming that these plaintiffs received tax deeds to the underlying real property, our holding in *Dillman* would prevent plaintiffs from using a tax sale to strengthen their title by asserting the protections of Utah Code Ann. § 78–12–5.1 (1987).

### Title by Adverse Possession

■  Plaintiffs claim that their predecessors gained title by adverse possession and cite our decision in *Park West Village v. Avise*[9] in support of their claim. In order to establish title by adverse possession, the party claiming adverse possession has the

---

**5.** *Marchant,* 771 P.2d at 680 (citing *Dillman,* 656 P.2d at 978–79).

**6.** 632 P.2d 827 (Utah 1981).

**7.** *Id.* at 831 (citations omitted).

**8.** *Dillman,* 656 P.2d at 978–79.

**9.** 714 P.2d 1137.

burden of proving [10] that possession was open, notorious, and hostile [11] and that taxes were paid for the entire statutory period.[12]

■ The Utah Court of Appeals correctly distinguished the case at bar from our decision in *Avise*. In *Avise*, the only taxes assessed were the taxes on the improvements, no other taxes were assessed, and the defendants' predecessor established that she had paid all assessed taxes for the period of adverse possession.

Here, plaintiffs have not met their burden of proof to establish that they paid all assessed taxes for any continuous period of adverse possession. The most that plaintiffs proved at trial was that they purchased and received tax sale deeds in 1914, 1917, and 1963, when taxes on the improvements were delinquent. Both parties concede that the old tax records are no longer available in the office of the county assessor. Plaintiffs were thus unable to prove that they paid the only taxes assessed to improvements or the underlying real property prior to, between, or after periods of delinquency.

Although plaintiffs made timely tax assessment payments in 1955, 1956, and 1958, the evidence clearly indicates that United Park City Mines Company was assessed and paid taxes on the underlying real property during those same years. The period of 1955 through 1958 does not establish a valid adverse possession title in plaintiffs, and plaintiffs have not upheld their burden of proving the elements of adverse possession for any continuous seven-year period.

### Utah Marketable Record Title Act

■ Plaintiffs claim that title to the real property is vested in them through the Marketable Record Title Act, Utah Code Ann. §§ 57–9–1 through –10 (1987). We affirm the Utah Court of Appeals' holding that since plaintiffs' tax deeds did not give them title to real property, they cannot use the Marketable Record Title Act to establish title.[13]

### Prescriptive Easement

■ Plaintiffs assert that even if they have not established title to the real property by vested title, adverse possession, or marketable record title, they are entitled to the use of the property by prescriptive easement. In order to establish a prescriptive easement to the property, plaintiffs must establish a use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years.[14]

■ The trial court found that plaintiffs' predecessors had worked for Silver King Coalition Mines Company, defendant's predecessor in interest, and that Silver King permitted plaintiffs' predecessor to construct a house on the real property. Plaintiffs' citations to case law and the trial court record to establish adverse use are without merit. We affirm the Court of Appeals' holding that plaintiffs did not uphold their burden in the trial court to establish each and every element of a prescriptive easement claim.[15]

### Liability of Park City

■ Plaintiffs claim that Park City Municipal Corporation is liable for the demolition of the house upon the property and ask for $20,000 in damages. Granting a demolition permit to a contractor, based on proper application, does not impose liability upon the grantor if the permit was wrongfully obtained or the work thereon was

**10.** *See Home Owners' Loan Corp. v. Dudley,* 105 Utah 208, 141 P.2d 160 (1943); *Central Pacific Ry. v. Tarpey,* 51 Utah 107, 168 P. 554 (1917).

**11.** *See Pacific Land & Water Co. v. Hartsough,* 50 Utah 581, 168 P. 552 (1917); *Mansfield v. Neff,* 43 Utah 258, 134 P. 1160 (1913).

**12.** *See Royal St. Land Co. v. Reed,* 739 P.2d 1104 (Utah 1987); *United Park City Mines Co. v. Clegg,* 737 P.2d 173 (Utah 1987).

**13.** *Marchant,* 771 P.2d at 680.

**14.** *Crane v. Crane,* 683 P.2d 1062 (Utah 1984).

**15.** *Marchant,* 771 P.2d at 682; *see also Garmond v. Kinney,* 91 N.M. 646, 579 P.2d 178, 178 (1978).

improperly performed.[16] We affirm the trial court's finding that the home was destroyed by a third party, Deer Valley Resort, to whom the permit was issued, and that Park City Municipal Corporation itself was not involved in the demolition.

Affirmed.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.

16. *See Rolfe v. Village of Falconer,* 62 N.Y.2d   884, 478 N.Y.S.2d 852, 467 N.E.2d 516 (1984).