**DURBANO METALS, INC., Plaintiff and Respondent,**

v.

**A & K RAILROAD MATERIALS, INC., Defendant and Appellant.**

No. 14928.

Supreme Court of Utah.

Jan. 23, 1978.

---

3. U.C.A., 1953, 59–14–72.

Philip C. Patterson and Findley P. Gridley of Patterson, Foley, Phillips & Gridley, Ogden, for defendant and appellant.

Glenn J. Mecham of Mecham & Richards, Ogden, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from a judgment of the District Court of Davis County, awarding plaintiff the balance due from defendant for railroad ties and parts delivered to defendant under contract, and dismissing defendant's counterclaim. Affirmed. Costs to plaintiff.

All statutory references are to the Utah Uniform Commercial Code, Utah Code Ann., 1953, Title 70A, as amended, unless otherwise indicated.

Plaintiff and defendant are both corporations engaged in the purchase and sale of used railroad materials. On or about November 8, 1974, plaintiff and defendant entered into an agreement whereby defendant was to purchase, and plaintiff was to sell certain used railroad materials, to be salvaged from 15 miles of track laid in the vicinity of Chugwater, Wyoming. Plaintiff had purchased these materials from the C. & S. Railroad prior to the time the track was torn up, under a purchase order which described only " . . . 15 miles railroad trim consisting of tie plates and angle bars for 90 # rail . . . ", and defendant was aware of said purchase by plaintiff. It appears that in the negotiations for the contract between these parties the defendant stated that it desired to purchase from the plaintiff the material it had recently acquired from the C. & S. and they reached an agreed price of $191 per net ton. Nothing was discussed concerning size or number of the ties or angle bars at that time.

In confirmation of their agreement, defendant sent to plaintiff a purchase order, as follows:

90,000 Each (approximately) 7″ × 11½″ tie plates for 90 # rail

4,800 pair (approximately) 90 # joint Bars, 5″ × 5″ × 5″ drilling .

\* \* \* \* \* \*

The above tie plates and joint bars compile necessary bars and plates for approximately 15 miles of track.

This purchase order was signed as accepted by plaintiff's president, Ernest Durbano.

On November 10, 1974, after an on-site inspection made by defendant's agent, defendant prepared two amended purchase orders, and sent them to the plaintiff. The first amended purchase order stated:

90,000 to 100,000 Each 7½″ × 10½″ for 9020 ARA rail, number 1 relay quality, Net ton $191.

\* \* \* \* \* \*

The above tie plates compile nevessary [sic] plates for approximately 15 miles of track.

And the second amended purchase order stated:

4,800 Pair ARA Angle Bars, drilled 5″ × 5″ × 5″.

\* \* \* \* \* \*

The above . . . angle bars compile necessary bars for 15 miles of track.

These purchase orders were neither signed as accepted nor objected to by plaintiff.

The C. & S. track was pulled up, and the parts were shipped to the defendant in 13 railroad gondola cars beginning in November, 1974, with the last gondola car arriving in May, 1975. The gondola cars contained 633.99 tons of tie plates, angle bars, and other materials. The tie plates varied as to the dimensions, and many did not conform to the dimensions as set forth in either of the purchase orders. Two of the gondolas contained 110-pound materials, rather than 90-pound.

Defendant unloaded the materials as they arrived, sorted them by size, and refused to pay for the last five shipments, claiming that some of the materials did not conform to the contract description.

Plaintiff brought action to recover the remainder of the purchase price per ton, and defendant counterclaimed for damages it incurred, claiming overpayment for the conforming goods, charges for handling costs on the nonconforming goods and for loss of anticipated profits, alleging that it had been unable to fulfill its contract with a customer in Peru which it had entered into in reliance on the contract with plaintiff.

The District Court found that the parties agreed to the purchase and sale of the 15 miles of C. & S. track, and that defendant had not relied on plaintiff's representations as to the size, dimensions or quantity of the ties and bars. The court dismissed defendant's counterclaim and awarded plaintiff the balance of the purchase price in the amount of $39,773.84.

Defendant assigns as error (1) the Court's admission of parol testimony regarding the negotiations of the parties, arguing that those negotiations were merged into and superseded by the final contract, as evidenced by the purchase orders, (2) the Court's failure to hold that the written purchase orders imposed upon plaintiff express and implied warranties of quality and merchantability that the goods would conform to the contract description under the Utah Uniform Commercial Code, (3) the Court's failure to find plaintiff in breach of those warranties, and (4) the Court's dismissal of defendant's counterclaim.

■ There was considerable testimony on whether the word "approximately" modified the quantity or the description of the goods, and we find that there is ambiguity in the purchase orders sufficient to sustain the Court's admission of parol evidence to establish the terms of the agreement.

Witnesses for both parties testified that it is consistent in the industry to have a variation in the material on a track bed 15 miles in length.

■ However, defendant argues that the oral negotiations may not *contradict* the final written agreement, under Section 70A–2–202. That section, in pertinent part states:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 70A–1–205) or by course of performance (section 70A–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

The purchase orders clearly were not intended to be a complete and exclusive statement of the terms pertaining to quantity and dimension. Defendant's own amendment of the purchase order, which changed the dimensions of the materials, supports the conclusion that the writing was not intended to be a final expression of the quantities and dimensions.

Defendant's argument concerning the contradiction between the oral negotiations and the agreement must fail as there was no final written agreement in addition to ambiguity existing, as noted ante.

■ Defendant, as noted earlier in this opinion claims error in the dismissal of its counterclaim in which it claimed damages for breach of contract on the ground that the plaintiff did not meet its obligation to deliver a specific quantity of 90-pound materials. Both parties believed that the fifteen miles of C. & S. track contained only 90-pound materials. Defendant waived the requirement that the materials be only 90-pound materials, however. The waiver occurred when defendant orally agreed to pay for these 110-pound materials at the contract price. See Sec. 70A-2-209(4). Therefore its basis for damages under the counterclaim is foundationally infirm.

■ The facts in this case also dispose of defendant's arguments concerning the imposition of express and implied warranties. Section 70A-2-313(1)(b) provides:

(1) Express warranties by the seller are created as follows:

\* \* \* \* \* \*

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Defendant does not persuade us that the particular description of the goods that it wrote was ever made a basis of the bargain between the parties.

■ Implied warranties of merchantability are dealt with in Sec. 70A-2-316(3)(b) which states:

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; . . .

As defendant admittedly inspected the goods itself, the District Court did not err in failing to hold plaintiff to an implied warranty.

ELLETT, C. J., and CROCKETT, MAUGHAN and HALL, JJ., concur.