MONROC, INC., a corporation, Plaintiff and Respondent,

v.

JACK B. PARSON CONSTRUCTION COMPANY, a corporation, and Aetna Casualty and Surety Co., Defendants and Appellants.

No. 15847.

Supreme Court of Utah.

Dec. 5, 1979.

LaVar E. Stark, Ogden, for defendants and appellants.

Michael Z. Hayes & Craig G. Adamson of Tibbals & Staten, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Plaintiff, Monroc, Inc., initiated this action to recover the difference between the original contract price and the modified contract price for certain goods delivered and accepted by defendant, Jack B. Parson Construction Company. The specific goods involved were ½ inch and ¾ inch bituminous surface course mixes and a seal coat mix.

Defendant incorporated these materials into I–215 Interstate Highway project in Salt Lake County. Upon trial before the court, judgment was rendered to plaintiff pursuant to the price terms under the modified agreement. Defendant, Parson, appeals therefrom, contending the prices set forth in the original contract were not modified. The judgment of the trial court is affirmed. All statutory references are to Utah Code Annotated, 1953, as amended.

In the spring of 1973, plaintiff supplied defendant with certain price quotations for materials for a highway project upon which defendant desired to bid. Thereafter, defendant was the successful bidder, and on December 12, 1973, a purchase order was submitted to plaintiff setting forth the prices and materials to be furnished by plaintiff. Plaintiff modified the terms for the price of oil to be supplied and executed the purchase order and returned it to defendant. Defendant accepted this modification without protest and without executing any writing acknowledging these amended terms of price, a fact of interpretive significance which will be discussed infra.

At the time the original purchase order was executed both parties anticipated that the asphalt-laying portion of the contract would begin in 1974. The work was delayed by the failure of the State to have the utilities relocated until September 30, 1974; by that date the temperature was too cold to proceed with the asphalt operations. The following July 18, 1975, defendant's agent contacted plaintiff's agent to arrange for the delivery of the materials. Defendant's agent inquired whether plaintiff would adhere to the prices set forth in the purchase order. Plaintiff's agent said no, stating the prices were for 1974 only, and the work was not done at that time. Plaintiff's agent testified there was a standard in the asphalt-selling industry of holding quoted prices for one year.

Plaintiff specifically refused to deliver the materials at the December 1973 prices as set forth in the purchase order because of the time elapsed and the increase in cost of these materials. In a telephone conversation on July 18, 1975, plaintiff's agent informed defendant's agent of the increased price of $1.25 per ton for the two bituminous asphalt courses, and the seal coat. The parties also agreed to other modifications of the purchase order. Plaintiff sent a letter to defendant dated August 21, 1975. The letter memorialized the oral agreement, made by the telephone conversation of July 18, 1975. The current prices for the surface courses, seal coat, and oil were set forth. The letter further noted the original order called for AC 15 and AC 20 oils, and that the State had agreed to change the specification to AC 10 oil with an anti-strip agent additive. The price for this substitute was $82.80 per ton. The letter further stated:

. . . In addition our agreement is that Parson will pay Monroc an additional $100 per day overtime charge when we go over an eight hour shift and will pay an additional $400.00 per day for Saturday work. . . .

On August 20, 1975, defendant, Parson, sent a letter to the State Project Engineer, wherein, it was stated:

I have recently been informed by our suppliers of bituminous surface courses that due to continued increases in labor, material and equipment costs, they are unable to provide the various products at previously quoted prices.

Because of this cost increase, we now submit revised unit prices for the below listed items:

The letter set forth revised prices for the two bituminous surface courses and the seal coat.

Plaintiff claims the parties agreed to the modification. Plaintiff's agent denied in his testimony that defendant's agent had stated in the telephone conversation of July 18, 1975, that Parson intended to hold Monroc to the prices set forth in the purchase order, but that Parson would attempt to collect the difference Monroc wanted from the State. Defendant, Parson, did not respond to the letter of August 21, 1975 from Monroc, as provided in Section 70A-2-201(2) by a "written notice of objection to its contents . . . within ten days after it is received." Defendant's agent testified he saw no reason to reply because of his reliance on the initial prices quoted in the purchase order; under his concept, no matter how long the delay was, the prices in the purchase order were binding.

Defendant's agent testified he was aware of the substantial inflationary pressures during 1974 and its tremendous impact on the construction industry. He further testified plaintiff's price increases were not unreasonable and constituted normal price increase during that period of time. Defendant's agent testified Parson was pursuing a claim against the State for these price increases.

In its complaint, plaintiff alleged, on July 18, 1975, the parties had agreed verbally to modify the agreement of December 12, 1973, that plaintiff had delivered the materials under the modified contract, and defendant had accepted and incorporated the materials into the project. Defendant in its answer denied the agreement of December 12, 1973, had been modified. Defendant further pleaded as an affirmative defense paragraph 8 of the purchase order, which provided: "Claims for extras positively will not be allowed unless ordered in writing." Defendant pleaded the failure to comply with this provision of the contract precluded plaintiff's recovery for the increased price.

The trial court ruled Section 70A-2-201(2) governed the situation between the parties and required defendant Parson to respond in writing within ten days after receiving the letter of August 21, 1975, from plaintiff, Monroc, if Parson objected to the proposed modification. Parsons did not respond. As a consequence, the oral agreement of July 1975 as confirmed in the letter of August 21, 1975, modified the original purchase order of December 12, 1973, as to the particulars specified in the letter. The trial court further found defendant

paid, without protest, the overtime charges as provided in the modified agreement. Defendant further accepted the new type of oil as provided in the modified agreement, and paid for it at the modified price. The trial court awarded judgment to plaintiff for the additional sum of $1.25 per ton (the modified price specified) for the bituminous surface course mixes and the seal coat mix delivered during the term of the contract.

The parties are in agreement the provisions of the Uniform Commercial Code, Title 70A, are applicable to this case, and they qualify as merchants under the act, viz., a contractor and a supplier of materials for a government project are merchants under the act.[1]

On appeal defendant contends the written purchase order could not be modified by an oral agreement confirmed by a writing signed by plaintiff but could only be modified in accordance with paragraph 8 of the purchase order which it claims requires a writing signed by defendant. Defendant argues the trial court erred by applying Section 70A-2-201(1), (2) rather than Section 70A-2-209(2) to the factual situation. Specifically, defendant claims the legal effect of paragraph 8 was to require that additional work or prices would not be authorized unless covered by an agreement signed by defendant. Since defendant did not sign a writing setting forth the price increases, it contends no modification was effected.

Section 70A-2-201 provides:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

(2) Between merchants if within reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection ▪ against such party unless written notice of objection to its contents is given within ten days after it is received.

Section 70A-2-209 provides:

(1) An agreement modifying a contract within this chapter needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this chapter (Section 70A-2-201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

Defendant argues the legal effect of Section 70A-2-209(2) is to permit the parties to create their own Statute of Frauds.[2] Defendant then claims Paragraph 8 of the purchase order complies with the requirements of Section 70A-2-209(2), which supplants Section 70A-2-201(2), the basis upon which plaintiff was awarded judgment pursuant to the modified agreement.

Defendant's entire argument is predicated on the meaning and legal effect of Paragraph 8, which provides:

Claims for extras positively will not be allowed unless ordered in writing.

1.  *C. R. Federick, Inc. v. Borg-Warner Corporation* (C.A. 9th Cir. 1977), 552 F.2d 852; *A & G Construction Co., Inc. v. Reid Brothers Logging Co.*, Alaska, 547 P.2d 1207 (1976).

2.  This contention is correct. The Official Comment under § 2–209, Uniform Commercial Code states: "Subsection (2) permits the parties in effect to make their own Statute of Frauds as regards any future modification of the contract by giving effect to a clause in a signed agreement which expressly requires any modification to be by signed writing . . . .."

This paragraph does not disclose clearly the intent of the parties to create a Section 70A–2–209(2) provision. An example of a clear, unambiguous 2–209(2) provision is set forth in *U. S. Fibres, Inc. v. Procter & Schwartz, Inc.*:[3]

> No modification of this agreement shall be binding unless such modification shall be in writing, accepted by the Purchaser and approved by an officer of the Company.

The contrast between Paragraph 8 and a definite 2–209(2) provision is clear. The parties further testified as to their respective interpretations of paragraph 8. Plaintiff's agent testified that his definition of the term "extra" in Paragraph 8 meant additional items and that a change in the price of an item was not an "extra." Defendant's agent testified that he understood the term "extra" meant additional work or variances in quantities or prices.

The trial court by ruling Section 70A–2–201–(2) governed the situation between the parties inferentially rejected defendant's claim that Paragraph 8 constituted a Section 70A–2–209(2) provision. This ruling must be sustained under the doctrine of practical construction, viz., the parties, by their action and performance, have demonstrated what was their meaning and intent, and the contract should be so enforced by the court.[4] The evidence indicated, at the time plaintiff signed the original purchase order it modified the agreement by adding certain provision concerning the price of oil. This modification was accepted by defendant without its execution of a writing of affirmation.

Another factor of great significance was the acceptance of other modifications, by defendant, as set forth in the confirmatory letter of August 21, 1975; and again without a writing signed by defendant. In the letter, a different type of oil was substituted for that designated in the purchase order, and the price was set forth. The letter further recited the oral agreement of the parties requiring defendant to pay for overtime work on weekdays and Saturdays. This was an additional item which was not covered in the original purchase order. Defendant's agent further testified the original purchase order specified approximately 18,000 tons of asphalt, and approximately 28,000 tons was delivered. There were no written purchase orders, executed by defendant, providing for these additional quantities, introduced into evidence. All of this evidence is inconsistent with defendant's claim, viz., under Paragraph 8 of the purchase order the parties intended any modification, as to additional work or variances in price or quantity, could only be effected by a writing signed by defendant. The trial court did not err in its ruling Section 70A–2–201(1)(2) applied to the modified agreement of the parties.

Plaintiff further cites an alternative basis to sustain its recovery. There was, in fact, a writing signed by defendant confirming there had been a modification with respect to the disputed items. As mentioned, ante, defendant wrote a letter to the State Project Engineer on August 20, 1975. This letter submitted revised unit prices necessitated by the supplier's increased prices for bituminous surface mixes and seal coat.

In 1 Anderson, Uniform Commercial Code (2nd Ed.), Section 2–209:12, p. 357, it is stated:

> The purpose of UCC § 2–209(2) is to protect against false claims that an oral modification has been made to a written contract and, in effect, permits the parties to make their own statute of frauds with respect to future modifications of their agreement.

The letter certainly fulfills the purpose to be accomplished by protecting defendant against false claims that there had been an oral modification to the written agreement. Defendant, nevertheless, contends a writing sent to the State was not sufficient to comply with the requirements of Section 70A–2–209(2).

---

**3.** 358 F.Supp. 449, 13 U.C.C.Rptr.Serv. 254, 262 (1972, D.C.E.D.Mich).

**4.** *Zeese v. Estate of Siegel*, Utah, 534 P.2d 85, 90 (1975).

Again in 1 Anderson, Uniform Commercial Code (2nd Ed.), Section 2–209:11, pp. 356–357, it is stated:

A signed agreement may validly provide that there can be no modification or rescission of the contract except by a signed writing and such a provision is binding on the parties.

A question of construction arises with respect to whether the terms 'signed agreement' and 'signed writing' as used in the Code refer to agreements and writings signed by both parties. It is probable that 'signed agreement' will be interpreted as requiring the signature of both parties, while a 'signed writing' will be sufficient if signed by the party who would be adversely affected by the modification.

Thus, the letter to the Project Engineer constituted a signed writing by the party (defendant), who would be adversely affected by the modification. Does the concept of a "signed writing" under the Code compel a conclusion the writing must be directed to the other party? Anderson states:

There is no requirement under the Code that the writing required to satisfy the statute of frauds, be a writing between the parties to the transaction. Consequently, letters, telegrams, or other written communications of a party to a contract are sufficient as memoranda for the purpose of the statute of frauds if they are otherwise sufficient as to content and signing. This conclusion is supported by principles of technical construction of the statute and by consideration of the history and purpose of the statute of frauds. As to the technical argument, the statute speaks only of a writing and does not require delivery to any particular person, such as the other party, in order to be effective. In this respect it is to be noted that the Code defines 'writing' in terms of physical characteristics, without any qualification or limitation in terms of delivery or issue.

With respect to the history and policy, the purpose of the writing required by a statute of frauds is to prevent or contradict a false assertion in the courtroom that the witness never had made the contract. If there is a writing signed by him which shows that there was a contract, this purpose of preventing perjury and fraud is achieved; and this is so without regard to whether the contradicting writing was sent to the other party to the transaction or to a third person. . . . In any case, assuming that in some manner the complaining party learns of the existence of a writing signed by the other party which is in the possession of a third person, the conclusion should be that such writing will satisfy the statute of frauds, if produced in court, to the same extent as though it had been originally sent by the signing party to the complaining party.[5]

■ In summary, upon disputed facts the trial court found the parties had entered into an oral modification of their written agreement, as to the price of certain materials. This oral agreement was confirmed by a writing in conformity with the requirements of Section 70A–2–201(2), to which defendant did not give a written notice of objection within ten days after its receipt. Even though Paragraph 8 of the purchase order could be construed as within the specialized provisions of Section 70A–2–209(2), the language used in the purchase order required no more than a writing signed by defendant for a modification of price. Such a writing was produced, viz., the letter to the State verifying the price of these items had been modified.

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

---

5. 1 Anderson, Uniform Commercial Code (2nd Ed.), § 2–201:31, pp. 269–270.