**LAKE PHILGAS SERVICE, a Utah corporation, Plaintiff and Appellee,**

v.

**VALLEY BANK & TRUST COMPANY, a Utah corporation; and Carl D. Bennett, Defendants and Appellants.**

No. 910128–CA.

Court of Appeals of Utah.

Jan. 12, 1993.

John T. Anderson (argued), Parsons, Behle & Latimer, Salt Lake City, for defendants and appellants.

Arthur H. Nielsen, Richard M. Hymas (argued), Nielsen & Senior, P.C., Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Valley Bank & Trust Company (Valley Bank) appeals the bench trial judgment in favor of Lake Philgas Service (Lake Philgas), a Utah corporation, awarding compensatory damages, interest and punitive damages for conversion of a trailer. We affirm.

## FACTS

We state the facts as found by or consistent with the trial court's findings.[1] In April 1988, Lake Philgas, a vehicle dealer in Millard County, agreed to sell a 1987 Aljo Alliance fifth wheel trailer to Carl Dee Bennett (Bennett) for $15,000, subject to Bennett obtaining financing. Lake Philgas and Bennett executed an Installment Sale

and Security Agreement (the Agreement) for presentation to First Security Bank, from whom Bennett expected to obtain financing. The Agreement contained standard provisions, including provisions that (1) Lake Philgas was selling the trailer and retaining a security interest in the trailer, (2) Lake Philgas would have remedies as a secured creditor, and (3) the Agreement constituted the entire agreement between the parties and could not be modified except in writing. Lake Philgas had previously requested sales financing from First Security for other customers, and all requests had been approved. Anticipating First Security's financing approval, Bennett and Lake Philgas also submitted an application for title and registration to the Motor Vehicle Division (MVD) of the State Tax Commission, and Bennett obtained automobile insurance. Bennett took possession of the trailer.

Subsequently, First Security notified Lake Philgas and Bennett that it would not provide financing. As a result, the parties never consummated the sale to Bennett, but instead agreed that Bennett would lease the trailer for $15 per day. Consistent with that agreement, Bennett retained possession of the trailer.

In the meantime, MVD issued a certificate of title to the trailer, showing Bennett as the owner and First Security as the first lien holder. MVD mailed the certificate to First Security. An officer of First Security thereafter endorsed the "first lien release" provision on the certificate and delivered it to Lake Philgas. Bennett, or someone acting with Bennett's ratification, endorsed the certificate prior to June 24, 1988. Lake Philgas retained possession of the certificate but never submitted it to MVD for issuance of a new title certificate in its name.

Earlier, in July 1987, Valley Bank obtained a deficiency judgment against Bennett and his former wife in the amount of $23,615.44. At that time, Valley Bank had no knowledge of any assets or property

---

1. On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard. *Van Dyke v. Chappell,* 818 P.2d 1023, 1024 (Utah 1991).

owned by Bennett. However, in July 1988, Valley Bank learned that Bennett was living in a trailer in Delta, Utah. Based on this information, Valley Bank began an investigation to determine if Bennett owned the trailer.

First, Valley Bank contacted Millard County and was informed that Bennett was the registered owner of the trailer. Valley Bank next contacted MVD, which informed Valley Bank that the title to the trailer listed Bennett as the owner and First Security as the first lienholder of the trailer. Valley Bank then contacted First Security to determine the nature of its interest in the trailer. Nikki Hirschi, assistant manager of the Delta branch of First Security, informed Russell Wilson, Valley Bank's Delta branch manager, that Bennett had applied for financing with First Security, but that his request had been denied. Hirschi also told Wilson that the MVD had sent a certificate of title for the trailer to First Security, but since it had declined Bennett's request for financing, First Security had endorsed the first lien release provision on the certificate and delivered the title to Alfred Lake, president of Lake Philgas, from whom Bennett had attempted to purchase the trailer. Hirschi further informed Wilson that she was not aware of any interest Bennett had in the trailer and that Lake Philgas was the owner, but said that she would contact Lake Philgas to confirm her understanding. Hirschi contacted Alfred Lake, who told her that her understanding was correct. Hirschi then contacted Wilson, told him of her conversation with Alfred Lake, relating that Lake had confirmed that Lake Philgas owned the trailer and that Bennett had no ownership interest in the trailer.

Other than checking on the trailer's insurance, Valley Bank conducted no further investigations. On August 4, 1988 Valley Bank's attorney obtained a writ of execution and praecipe from the district court, directing the Millard County Sheriff's Office to levy upon and seize the trailer. The writ was executed later that day.

The next day, Bennett filed a response to the execution and praecipe, stating that he had no ownership interest in the trailer, but that Alfred Lake was the owner, and that Bennett remained in possession of the trailer pursuant to an oral agreement with Alfred Lake to rent the trailer for $15 per day. In addition, Alfred Lake contacted Wilson and told him that Lake Philgas owned the trailer, that Bennett had no interest in it, that Lake Philgas possessed the endorsed title certificate, and explained the circumstances of the failed sale. Wilson told Alfred Lake that Valley Bank intended to go ahead with the sheriff's sale of the trailer. Lake Philgas, Bennett, and others acting on their behalf, then notified Valley Bank approximately nine separate times that Lake Philgas owned the trailer and that Bennett had no ownership interest in it.

On August 17, 1988, Alfred Lake filed a notice with the court, declaring that on August 9, he had served his affidavit and notice on Valley Bank and its attorney, advising them that he claimed full and exclusive ownership of the trailer. The affidavit stated that he, Alfred Lake, was the sole owner of the trailer and that he had advised Valley Bank on August 5 "of his total and exclusive ownership." Alfred Lake's verified complaint, filed August 17, 1988, again asserted that he was the owner.[2] The complaint also asserted that both Alfred Lake and Bennett considered the Agreement to have been cancelled when Bennett was unable to obtain financing, and that Bennett was merely renting the trailer from Lake with an option to buy the trailer if other financing arrangements could be made.

On August 17, 1988, the Millard County Sheriff conducted an execution sale to sell whatever interest Bennett had in the vehicle. Prior to the sale, Lake Philgas's attorney informed Valley Bank that the intend-

---

**2.** There was some confusion as to whether Lake Philgas, a corporation, or Alfred Lake, the corporation's sole stockholder, owned the trailer. We do not find that confusion material to the critical issue of whether Bennett owned the trailer instead of Lake Philgas or its alter ego, Alfred Lake.

ed purchase of the trailer had not been consummated, that Bennett had paid nothing to Lake Philgas for the trailer, that Bennett had no ownership interest in the trailer, and that Lake Philgas was the sole and actual owner of the trailer. Counsel demanded that Valley Bank cancel the sale. Lake Philgas's attorney also held up the title to the trailer, stating that Bennett had endorsed the owner transfer provision on the title, transferring title back to Lake Philgas.[3] No Valley Bank representatives present at the sale made any attempt to examine the certificate. Wilson testified at trial that even if he had examined the certificate, he would not have canceled the sheriff's sale. Valley Bank credit bid a portion of its judgment against Bennett and obtained a sheriff's certificate to the trailer.

Lake Philgas subsequently brought suit against Valley Bank for wrongful conversion of the trailer. The trial court ruled in favor of Lake Philgas and awarded $16,300 in compensatory damages for the loss of the trailer, plus $25,000 punitive damages. Valley Bank appeals, alleging that the trial court erred in awarding judgment to Lake Philgas. Specifically, Valley Bank argues: (1) Lake Philgas merely held a security interest in the trailer under the sales agreement with Bennett, and therefore the trial court erred in determining that Valley Bank was liable to Lake Philgas for conversion; (2) Lake Philgas should be estopped from asserting that it was the owner of the trailer because it allowed Bennett to retain all indicia of ownership; and (3) punitive damages were inappropriate because Valley Bank's conduct at worst constituted negligence.

## STANDARD OF REVIEW

■ We will not set aside the trial court's findings of fact unless they are clearly erroneous. Utah R.Civ.P. 52(a). "A finding is clearly erroneous if it is against the great weight of evidence or if the court is otherwise definitely and firmly convinced that a mistake has been made." *Bountiful v. Riley*, 784 P.2d 1174, 1175 (Utah 1989). We review a trial court's conclusions of law under a correction of error standard, granting no deference to the trial court. *Marchant v. Park City*, 771 P.2d 677, 680 (Utah App.1989), *aff'd*, 788 P.2d 520 (Utah 1990).

## ANALYSIS

■ To sustain an action for conversion, a party must prove that the act in question constituted " 'an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.' " *Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (quoting *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958)). " 'Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with *the owner's right.'* " *Id.* (emphasis added). We must determine, therefore, if Valley Bank was legally justified in seizing the trailer or if Lake Philgas as owner of the trailer was legally entitled to its use and possession without interference from Valley Bank.

### Lake Philgas's Interest in the Trailer

Valley Bank argues that its judgment lien against Bennett gave it a perfected security interest in the trailer superior to Lake Philgas's unperfected and unrecorded security interest under Utah Code Annotat-

**3.** At trial, Valley Bank proffered the testimony of an expert witness that there was a "high degree of certainty" that the signature on the endorsement was a forgery. When faced with this testimony, Bennett recanted earlier testimony that he had signed the owner transfer provision on the title and stated that he did not remember whether he had signed it, and that it was possible that he did not. The notary public whose signature also appears on the title testified that she didn't see Bennett sign it, but that his signature was already there when she notarized it. The trial court found that "Bennett endorsed the 'owner's transfer' provision of the certificate of title, or ratified the endorsement, evidencing his lack of any ownership interest in the trailer."

ed section 41–1–80(1) (1988).[4] Under such circumstances, argues Valley Bank, the trial court erred in concluding that Valley Bank was liable to Lake Philgas for conversion.

Valley Bank contends that the Agreement and MVD's issuance of title to Bennett vested title to the trailer in Bennett, and that without properly re-titling the trailer in Lake Philgas's name, Lake Philgas had, at best, an unperfected security interest. Valley Bank does not, however, address the following findings of fact entered by the trial court which we paraphrase:

(1) Lake Philgas assumed that First Security Bank would finance Bennett's purchase, as it had all previous requests for financing. Based on that assumption, Lake Philgas sent the application for title and registration to the State Tax Commission, MVD.

(2) First Security notified Lake Philgas that it would not provide financing after the sales agreement was signed, after the title and registration application had been sent to MVD, after Bennett took possession of the trailer, and after Bennett obtained insurance for the trailer. Because First Security declined to provide financing, both Lake Philgas and Bennett deemed their agreement to be cancelled and without effect.

(3) Alfred Lake attempted to finance Bennett's purchase through Valley Bank, by contacting Russell Wilson, the branch manager, but Wilson refused.

(4) First Security endorsed the title certificate received from MVD and sent it to Lake Philgas, which retained it at all times.

(5) The sale to₀ Bennett was never consummated because financing could not be obtained and Bennett never paid any amount to Lake Philgas for the trailer.

(6) Prior to June 24, 1988, Bennett endorsed the certificate of title, or ratified

said endorsement, but Lake Philgas did not obtain a new title certificate.

(7) Nikki Hirschi, of First Security Bank, contacted Wilson a second time and confirmed that Lake Philgas held title to and was the owner of the trailer, and that Bennett had no ownership interest in the trailer.

(8) Wilson knew that a lending institution usually delivers a title containing its signed lien release to the owner.

(9) At all material times, Wilson knew and had actual notice that Lake Philgas owned the trailer and that Bennett had no ownership interest.

(10) Prior to obtaining the writ of execution for the trailer, Valley Bank made no serious good faith attempt to verify Lake Philgas's ownership claims, except to check public records and make one inquiry about insurance.

(11) Numerous attempts (detailed in the court's findings) were made prior to the sheriff's sale, to advise Valley Bank that Lake Philgas had full and exclusive ownership of the trailer and that Bennett had no ownership interest whatsoever.

These findings are supported by substantial evidence presented at trial and are, therefore, not clearly erroneous.

■ Nevertheless, Valley Bank asserts that the evidence establishes Bennett's ownership of the trailer as a matter of law. According to Valley Bank, the Agreement between Bennett and Lake Philgas, MVD records and county tax records showing Bennett as the trailer's owner, insurance obtained by Bennett through his application identifying him as the owner, and Bennett's possession of the trailer, support Lake Philgas's status as the holder of an unperfected security interest, and negate a claim of ownership interest. For the following reasons, however, we find that the evidence cited by Valley Bank establishes only a rebuttable presumption of Bennett's ownership and that evidence found credible by the trial court rebuts that presumption.

---

**4.** The 1988 statute stated: "(1) Except under Subsection (2), no lien, upon a registered vehicle, except a lien dependent upon possession, is valid as against the creditors of an owner acquiring a lien by levy or attachment or subsequent purchasers or encumbrancers without notice until Sections 41–1–82 through 41–1–87 have been complied with." This section is now recodified at Utah Code Annotated section 41–1a–601 (Supp.1992).

First, Valley Bank claims that Bennett's ownership of the trailer is established by the unmodified Agreement. Valley Bank relies on the Agreement's provision that any modifications had to be in writing, and on Utah Code Annotated section 70A–2–209(2) (1990) [5]. The agreement, as with most such sales contracts, is for the purpose of defining the relationship between the purchaser and seller, and is not intended for the benefit of a third party creditor. Furthermore, despite the term requiring written modifications, there is a "well-recognized rule that notwithstanding recitals in a prior contract restricting changes or modifications in its terms, the parties are as free in appropriate circumstances to renegotiate new terms or to make separate supplemental agreements as they were to make the contract in the first place." *Prince v. R.C. Tolman Const. Co., Inc.*, 610 P.2d 1267, 1269 (Utah 1980). Also, in *Monroc, Inc. v. Jack B. Parson Const. Co.*, 604 P.2d 901 (Utah 1979), the Utah Supreme Court noted that the provisions of Utah Code Annotated sections 70A–2–201 and –209 should be considered "under the doctrine of practical construction, viz., the parties, by their action and performance, have demonstrated what was their meaning and intent." *Id.* at 905. Furthermore, Utah Code Annotated section 70A–2–209(4) (1990) provides that an oral attempt to modify a contract can operate as a waiver of section 209(2)'s requirement of written modification. *See Durbano Metals, Inc. v. A & K R.R. Materials*, 574 P.2d 1159, 1162 (Utah 1978). Therefore, under Utah Supreme Court precedent, Lake Philgas and Bennett had the legal capacity to cancel the sales agreement without doing so in writing. Further, Valley Bank as a stranger to the contract, had no right to rely on it, did not receive a copy of it until after it attached the trailer, and did not convince the trial court that Lake Philgas and Bennett had conspired to falsely claim cancellation of the Agreement.

Second, Valley Bank cites the fact that registration and title were in Bennett's name. However, again this fact establishes only a presumption of ownership, rebutted by legally relevant evidence presented at trial and deemed credible by the court. In an early Utah case construing predecessor statutes governing motor vehicles, the court held that transfer of title was not mandatory, but was "to protect innocent purchasers and third parties from fraud but was not intended to be controlling as between the parties to the transaction." *Jackson v. James*, 97 Utah 41, 89 P.2d 235, 237 (1939). Title was intended to provide a "flag of warning to prospective transferees or encumbrancers." *Id.*

In *Dahl v. Prince*, 119 Utah 556, 230 P.2d 328, 330 (1951), the *Jackson* holding was reiterated in a manner applicable to the instant case. *Dahl* addresses the rights of a judgment creditor while determining whether ownership vests in the individual who is indicated as the owner on MVD records or in the individual who holds an endorsed unregistered title certificate. In *Dahl*, a creditor obtained a judgment against a vendor of an automobile. The vendor had endorsed the certificate of title, but the vendee did not take the necessary steps to have a new title issued in his name. The creditor obtained a writ of attachment on the automobile. The court held that Utah Code Annotated section 57–3a–72 (predecessor to section 41–1–78 (1988)) was not applicable. The vendee had at least equitable title to the vehicle, and the power to transfer it to a third party. Registration of title was deemed to be for the "protection of innocent purchasers." *Id.*, 230 P.2d at 330. The court went on to note that the creditor was not a bona fide purchaser for value and that a contrary rule would allow a creditor to attach any time during the time required to obtain a new title. The certificate holder was found to be the owner and a creditor of the official title holder could not execute on its lien. A creditor lien holder could "divest[ ] the debtor of only such title as the debtor has at the date of the levy." *Id.*, 230 P.2d at 331. Similarly, because in this case, "ownership" passed from a proposed buyer

5. "A signed writing that excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded." Utah Code Ann. § 70A–2–209(2) (1990).

(Bennett) to the seller (Lake Philgas) by virtue of the failed sale and endorsed certificate of title, Bennett's creditor cannot attach property not belonging to its debtor.

Under *Jackson* and *Dahl,* a vehicle owner's failure to obtain accurate title certification will not operate to allow a creditor of the record title holder to levy on the vehicle, when the parties to the vehicle transaction validly and non-fraudulently intended and agreed that the non-debtor owned the vehicle. *See also Farr v. Brinkerhoff,* 829 P.2d 117, 122 (Utah App. 1992) (holding purported sale of property not owned by debtor invalid); *Basin Loans, Inc. v. Young,* 764 P.2d 239, 240 (Utah App.1988) (ruling buyer at sheriff's sale purchases only interest judgment debtor had in property).

Valley Bank also argued Bennett's possession of the trailer as an indicia of his ownership. However, this factor also is subject to rebuttal. The trial court found that certain facts communicated to Valley Bank well before the writ of execution issued rebutted any presumption of ownership arising from possession.

Valley Bank's alleged reliance on Bennett's application for insurance is likewise unpersuasive. As found by the trial court, Bennett took this step in expectation of obtaining financing from First Security Bank. Further, Bennett's signing of preprepared forms is not fatal to his later recantation of ownership. The documents were merely standard forms used in the normal course of selling and insuring vehicles. When the transaction fell through, they became meaningless.

Instead of being bound by the presumptions espoused by Valley Bank, the trial court found the following facts. Lake Philgas attempted to sell the trailer to Bennett. The sale fell through because Bennett could not obtain financing. Bennett paid nothing at all to Lake Philgas for the trailer—no consideration. They agreed that the sale was canceled. Thereafter, Lake Philgas agreed to lease the trailer to Bennett. Valley Bank, a creditor of Bennett's, discovered that Bennett was living in a trailer which was registered and titled in his name. Upon further inquiry, Valley Bank was informed that Bennett had never gone through with the purchase of the trailer because he could not get financing, and that the seller of the trailer, Lake Philgas, with ten years experience as a dealer of trailers and other vehicles in Millard County, owned the trailer. Valley Bank was told these facts many times prior to the time Valley Bank conducted a sheriff's sale of the trailer. Lake Philgas offered to show Valley Bank the endorsed title certificate. Valley Bank refused to examine the title certificate and said the certificate would not influence its decision to proceed in any event. The trial court concluded that Valley Bank had converted Lake Philgas's property. To hold otherwise, given the facts as found by the trial court, would allow Valley Bank, a creditor, to levy on property owned by Lake Philgas, for a debt owed by Bennett, who had no ownership interest in the trailer and had provided no consideration whatsoever for the trailer.[6] Such a result would not only be contrary to Utah law, it would also be unjust.

The trial court did not abuse its discretion in determining that the proposed sale between Lake Philgas and Bennett was never consummated, that Valley Bank had notice that Lake Philgas owned the trailer, and that Bennett had no interest in it. Further, the trial court correctly concluded that Valley Bank had no priority interest in the trailer superior to the ownership interest of Lake Philgas.

### Estoppel

Valley Bank argues that Lake Philgas should be estopped from recovering any damages because Valley Bank relied in good faith on Lake Philgas's conduct which created the impression that Bennett owned the trailer. Valley Bank cites *CECO Corp.*

---

**6.** Valley Bank's assertion that it had priority over Lake Philgas pursuant to Utah Code Annotated section 41–1–80(1) (1988) is inapplicable because Lake Philgas owned the trailer and was not a secured creditor. The statute governs only competing lien claimants.

*v. Concrete Specialists, Inc.*, 772 P.2d 967 (Utah 1989). In *CECO*, the court identified three elements necessary to a successful equitable estoppel defense:

> (i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) *reasonable action or inaction* by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Id.* at 969–70 (emphasis added).

We focus on whether Valley Bank met the second prong of the test by reasonably relying on MVD's records showing Bennett as the owner of the trailer. The trial court made a finding that from June 9, 1988, "Valley Bank knew or should have known, and had actual notice, that Lake was the owner of the trailer and that Bennett had no actual ownership interest in the trailer." The court then detailed events subsequent to June 4, 1988, when Lake Philgas and its agents attempted to or did inform Valley Bank of Lake Philgas's ownership of the trailer up to and including the day of the sheriff's sale. These findings are supported by substantial evidence and negate any possible claim of reasonable reliance by Valley Bank. We therefore find no error in the court's conclusion that Valley Bank could not have reasonably relied on MVD records in the face of actual notice given and received that those records were inaccurate.

### Punitive Damages

Finally, Valley Bank argues it should not have been assessed punitive damages because it acted reasonably, or, at worst, negligently in executing on the trailer. Both parties acknowledge that punitive damages are appropriate only for conduct which is willful and malicious or that manifests a knowing and reckless indifference and disregard toward the rights of others. *Johnson v. Rogers*, 763 P.2d 771, 774 (Utah 1988). In this case, the trial court found as follows:

> the actions of Valley Bank in attaching the trailer and causing the trailer to be sold at sheriff's sale were willful and intentional, and under all of the circumstances as shown by the evidence, such actions manifested a knowing or reckless indifference towards and disregard of, the right of [Lake Philgas], for which [Lake Philgas] is entitled to recover punitive damages in the amount of $25,000.

In order to attack a trial court's fact findings, "an appellant must marshall all evidence in favor of the facts as found by the trial court." *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991). If the evidence is not properly marshalled, we will assume the findings are supported and proceed to review "the accuracy of the lower court's conclusions of law and the application of that law in the case." *Id.* Valley Bank has failed to marshall the evidence supporting the above quoted finding or other findings of the court which further support this finding. We therefore assume there is sufficient evidence in the record to support the court's findings that Valley Bank's conduct was willful and intentional.

A punitive damages award must be based on reason or justice and not on passion or prejudice. *First Security Bank of Utah, N.A. v. J.B.J. Feedyards, Inc.*, 653 P.2d 591, 598 (Utah 1982). Valley Bank has not argued that the award was based on passion or prejudice nor that the amount was excessive, only that its conduct was not intentional. In light of the court's detailed fact findings regarding Valley Bank's conduct, we cannot say as a matter of law that the punitive damages were assessed out of passion or prejudice.

### CONCLUSION

The trial court correctly determined that Lake Philgas was the owner of the trailer and that Valley Bank's creditor lien against Bennett did not entitle it to attach the trailer. Further, the court acted within its discretion in determining that Lake Philgas was not estopped from receiving damages for conversion from Valley Bank because

**960**

Valley Bank could not have reasonably relied on public records when it had actual notice that those records were incorrect. Finally, the award of punitive damages did not constitute an abuse of discretion. The judgment of the trial court is therefore affirmed.

GARFF and RUSSON, JJ., concur.